*paid*

FILED

OCT 3 1 2018

Avis Copelin
Christian Copelin
Parties In Interest
4545 Auckland Ave
North Hollywood CA 91602

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WOODLAND HILLS DIVISION

|  |  |
|---|---|
| In Re:<br><br>Oligarch Capital LLC<br><br>Debtor | ) Case No.: 1:17-bk-10012-MT<br>)<br>)<br>) Chapter 11<br>) *NOTICE OF MOTION AND*<br>) MOTION TO REOPEN CASE AND TO<br>) IMPOSE AN AUTOMATIC STAY<br>)<br>)<br>) [No Hearing Required]<br>) *EMERGENCY 24 HRS* |

**TO THE HONORABLE MAUREEN TIGHE, UNITED STATES BANKRUPTCY**

**JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND OTHER INTERESTED**

**PARTIES:**

PLEASE TAKE NOTICE that Parties In Interest, Avis Copelin and Christian Copelin hereby

respectfully request an order to reopen the subject case, one week ahead of the termination of a

stipulated one-year bar, accompanied by an order to impose an automatic stay from the court.

Alternatively, it is requested that the court permit the Debtor to immediately file a new Chapter 11

case and, due to exigent circumstances, provide for an automatic stay upon such filing. Christian

Copelin (Party In Interest; hereinafter "Copelin") is the guarantor of the loan in dispute on the subject

property, commonly known as 4545 Auckland Ave, North Hollywood CA 91602, is an occupant of

the property, and is the sole named Defendant of an unlawful detainer matter filed by NPI Debt Fund

I, LP (Creditor; hereinafter NPI). Avis Copelin is the CEO of Debtor and has invested a significant

amount of personal funds into the property and legal actions.

A motion to reopen may be filed by a debtor or other party in interest. Fed. R. Bankr. P. 5010. A

party in interest is defined by the Bankruptcy Code as the debtor, the trustee, a creditors' committee,

an equity security holders' committee, an equity security holder, or any indenture trustee. 11 U.S.C. §

1109(b). This list is not exclusive and may include others with "sufficient stake in the proceedings."

In re Papazov, 610 F. App'x 700, 701 (9th Cir. 2015) (not for publication).

Pursuant to the stipulated dismissal of this action in late 2017, NPI held an unlawful foreclosure sale of the subject property on or about December 1, 2017; and subsequently filed an unlawful detainer matter to unlawfully take possession of the property. Both the foreclosure sale and the unlawful detainer action were unlawful because as Copelin and the Debtor have both now found out, NPI was not a licensed Finance Lender when it made the loan on the subject property, the loan was also not made through a licensed real estate broker, and NPI was therefore prohibited under California law from taking legal action to enforce the loan by recovery of its collateral or otherwise. Therefore, Parties In Interest seek to reopen the bankruptcy matter to request an automatic stay for Debtor's asset, 4545 Auckland Ave North Hollywood CA 91602. During Debtor's bankruptcy matter Debtor was aware and raised the issue that NPI had a lien against Debtor's property that was usurious, unlawful and thus unenforceable by way of foreclosure or by way of an unlawful detainer against a guarantor of the loan (Copelin).

Debtor defaulted on the loan because Debtor was unable to refinance the loan at the fault of the lender. Debtor had several prospective refinance lenders who were aware of the fact that the loans were unlawful and refused to reward Debtor's lender for its unlawful actions. It was these lenders that advised Debtor of the unlawful nature of the loans. Despite the unlawful nature of the loan a series of negotiations were attempted between Debtor's brokers for one of the loans; however it was never disclosed to lender at the time that the reason the loan amount was reduced was due to the unlawful loan. Debtor signed loan docs and the refi lender was prepared to fund the loan on or about the early part of June 2016 when the Notes were due. Debtor's lender on the other hand refused to negotiate a reasonable payoff which left Debtor with no other options but default. (See attached email communications between Avis Copelin, Debtor attorney and lender owner TJ Coveyou). There were additional verbal communications between Debtor's attorney and Mr. Coveyou wherein Debtor's brokers in a final effort to salvage the deal, proposed to split the closing costs evenly which would have given lender approximately 30K in interest payments that they did not legally have a right to collect. However, that offer was refused. Debtor made several subsequent attempts to secure a loan up to the point of the foreclosure to no avail due to the same set of circumstances. It is unconscionable that the legal system would reward the unlawful and unconscionable behavior of an unlicensed lender who has no standing to pursue legal action against Debtor. Debtor should not be

forced to lose its asset due to this creditors callous abuse and disregard of the law. As previously stated, Debtor and Parties In Interest discovered since the subject matter was dismissed that NPI is unlicensed; therefore stay relief is appropriate to protect debtor's property. An unlicensed entity cannot conduct business in the State of California. California Financial Code Division 9, Section 22100 (a) states as follows: "No person shall engage in the business of a finance lender or broker without obtaining a license from the commissioner." The Department of Business and Oversight (hereinafter DBO) and the Department of Real Estate (hereinafter DRE) have active and open investigations into this company. (Please see attached documentation). The matter was initially referred by the DBO to the DRE. However, the DRE just recently referred part of the investigation to the DBO and Debtor is waiting on confirmation of whether or not this investigation with remain as noted or will revert back to the DRE. Regardless, it has been made clear that an investigation is in order and will proceed. Parties In Interest are requesting that the Court impose the stay until the investigation is completed. This Court has previously expressed a willingness to allow a stay subject to evidence of the investigation and an ability to establish a plan to reorganize. An official letter from the DRE will be forthcoming. However, an email from the DRE Special Investigator confirming the validity of the investigation has been submitted with this motion.

Debtor's lien for the property is in dispute. The property is adequately protected with a value of approximately 2.250M based on a previous appraisal submitted in the record dated Feb 2017. Parties In Interest seek the opportunity for a stay to challenge the validity of the debt and the unlawful foreclosure sale. The bankruptcy court is the proper venue to challenge the debt. The DRE and DBO have verified that the lender is unlicensed and in violation of the California Business and Professions Code. **The California Business and Professions Code, Division 7, Section 17200 states as follows:** "As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."

This court has injunctive power over this matter. Business and Professions Code Division 7, Section 17203 states as follows: Injunctive Relief—Court Orders. Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. **Additionally,** the bankruptcy court has broad discretionary authority to reopen a case "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). This Court has the

1  authority to reopen the case to allow relief in the form of a stay to protect Debtor's asset which is

2  necessary for a reorganization. Debtor has the right to dispute the validity of the claim and Lender

3  should be required to prove its validity. Creditor has grossly exaggerated the value of its claim and

4  should not be able to take possession of Debtor's property without a proof of claim.

   A bankruptcy court has discretionary authority to reopen a case to determine a substantive dispute on

5  its merits. In re Ludvigsen, BAP No. MB 14-039, Bankr. No. 13-12232-WCH, 2015 WL 3733193

6  (B.A.P. 1st Cir. Jan. 16, 2015) (not for publication).

7  **A dismissed case can be reopened** for cause prior to being fully administered, under certain

8  circumstances, under § 350(b) to address an unfinished detail or administrative issue. In re Finch, 378

9  B.R. 241 (B.A.P. 8th Cir. 2007).

10 The bankruptcy court may grant a motion to reopen under § 350(b) without either notice or a hearing.

11 "Nothing in § 350, or in its implementing Rule 5010, requires 'notice and hearing' prior to the motion

12 being granted." In re Miller Auto. Group, Inc., No. 14-6047, 2015 WL 4746246, at *3 (B.A.P. 8th

   Cir. filed Aug. 12, 2015).

13 On November 7, 2017 the Court dismissed the subject matter along with a 1 year bar to filing. The

14 deadline for the bar ends in approximately 1 week. Due to the exigent circumstances, Parties In

15 Interest request leave of Court to reopen the case so that a stay may be imposed and Debtor's asset

16 may be protected. Debtor has secured counsel should the Court grant this motion.

17 As an unlicensed lender, NPI does not have standing to pursue any court actions against Debtor's

18 property. Therefore Debtor respectfully requests that this motion is granted on shortened notice with

19 no hearing required. Alternatively, if the Court does not feel compelled to grant this motion

20 accordingly; Parties In Interest request a temporary stay and a hearing on shortened or regular notice

   so that Debtor may address any concerns of the Court.

21

22 DATED: October 31, 2018

23                                        Avis Copelin
                                          Party In Interest
24

25

26                                        Christian Copelin
                                          Party In Interest
27

28

On Oct 29, 2018, at 2:45 PM, Hurley, Ross@DRE <████████████> wrote:

Hi Avis,

I can confirm the information that you stated in your previous email, however, I cannot officially send you anything else. That is why we have the flag section for such requests, in case of any legal issues.

Thank you,

Ross Hurley
Special Investigator
Department of Real Estate - MLA
916-████████

<image001.png>

From: Avis Copelin [mailto:████████████]
Sent: Monday, October 29, 2018 2:31 PM
To: Hurley, Ross@DRE <████████████>
Subject: Re: 118-0601-017 Newport Private Investments Inc.

I spoke to the Flag Unit as you advised regarding the documentation that I requested; and was advised that it takes approximately 1 week for them to provide the documentation.

Is it possible for you to email me as a follow up the information that we discussed by phone. Alternatively, can you reply to this email that you advised me the lenders that made the loans to me, Arch Loans SPE, LLC and NPI Debt Fund I, LP are not licensed by the Department of Real Estate. Also, you verified that the entities are not licensed by the Department of Business and Oversight.

However, Newport Private Investments, Inc. and Tracy Coveyou are the owners of these entities  and are licensed under your jurisdiction. Therefore, the investigation will continue.

If you are unable to respond I understand and I will wait for the documentation from the Flag Unit.


On Oct 29, 2018, at 2:06 PM, Hurley, Ross@DRE <████████████> wrote:

Hi Avis,
Here is the information for the "Flag unit" they will provide you with the information that you need.

Phone Number 916-263-8980.

Thank you,

Ross Hurley
Special Investigator
Department of Real Estate - MLA
916-████████████

STANLEY MOSK COURTHOUSE
111 NORTH HILL STREET
LOS ANGELES, CA 90012

**FILED**
Superior Court of California
County of Los Angeles

**SEP 20 2018**

Sherri R. Carter, Executive Officer/Clerk
By_____ Deputy
Jamie Jones

SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES
LOS ANGELES JUDICIAL DISTRICT

PLANTIFF: NPI

DEFENDANT: COPELIN

**ORDER**
STAYING EXECUTION OF JUDGMENT : SETTING HEARING

CASE NUMBER

18 STUD 01658

It is ORDERED that execution on the within judgment be stayed until ___10-31-18___

☐ If DEFENDANT posts $ _____ in CASH, CASHIER'S CHECK OR MONEY
ORDER (made payable to "Clerk, L.A.S.C.") in Dept. ___ between 1:30pm and 3:00pm
on_____, 20___.
The motion will be set in Dept. ___ at 1:30 p.m. on_____ 20___, and an order shortening
time for service of said motion will be granted and stay will be extended through the hearing date.

☐ Default and Default Judgment are set aside, all writs are recalled and quashed, the answer is
deemed filed and the case set for trial on _____ at 8:30am in Dept ___.

☒ Sheriff ordered to evict on ___11-1-18___. If prior posting, no new 5 day
notice required. no further claims to be accept T or motions

☒ Clerk to give certified copy of this order to sheriff.

Hearing for Motion set _____at 1:30 p.m. in Dept. ____

On the Court's own motion, time for service of the foregoing Notice of Motion and Order is shortened
and service shall be made by mailing a copy of the Motion and Order to:

☐ Office of Plaintiff's Attorney ☐ Plaintiff ☐ Office of Defendant's Attorney ☐ Defendant

☐ Clerk to give notice. ☐ Notice waived ☐ Plaintiff to give notice ☐ Defendant to give notice.

Proof of Service of the Motion to be filed in Dept ____ by the date of the hearing. Opposition papers to
be filed in Dept. ____ the day before the hearing.

DATE: 9-20-18

_____
JUDGE/COMMISSIONER

**DEBORAH L. CHRISTIAN**

9/21/2018

1                        UNITED STATES BANKRUPTCY COURT

2            CENTRAL DISTRICT OF CALIFORNIA - SAN FERNANDO VALLEY

3                                   --oOo--

4    In Re:                      )    Case No. 1:18-bk-12057-MT
                                 )
5    AUCKLAND SENIOR CARE, LLC   )    Chapter 11
                                 )
6    Debtor,                     )    Woodland Hills, California
                                 )    August 23, 2018
7    ----------------------------X    Thursday, 9:00 A.M.

8                                     ORDER TO SHOW CAUSE
                                      (1) WHY THIS CASE SHOULD
9                                     NOT BE DISMISSED FOR
                                      VIOLATION OF LOCAL
10                                    BANKRUPTCY RULE 9011-2(a);
                                      OR IN THE ALTERNATIVE,
11                                    (2) WHY A PATIENT CARE
                                      OMBUDSMAN SHOULD NOT BE
12                                    APPOINTED

13
                              TRANSCRIPT OF PROCEEDINGS
14                    BEFORE THE HONORABLE MAUREEN TIGHE
                        UNITED STATES BANKRUPTCY JUDGE
15
     APPEARANCES:
16
     For the Debtor:              AVIS COPELIN, *Pro Se*
17                                Auckland Senior Care, LLC
                                  4545 Auckland Ave
18                                North Hollywood, California  91602

19
     For the Debtor:              WILLIAM T. HEYWOOD, ESQ.,
20   *(Via Telephone)*            Law Office of Victor Meyen
                                  122 Patrician Way
21                                Pasadena, California  91105

22

23

24
     Proceedings produced by electronic sound recording;
25   transcript produced by transcription service.



| | | |
|---|---|---|
| 1 | Court Recorder: | Julie Cetulio |
| 2 | | U.S. Bankruptcy Court<br>Central District of California<br>21041 Burbank Boulevard |
| 3 | | Woodland Hills, California  91367<br>(855) 460-9641 |
| 4 | | |
| 5 | Court Transcriptionist: | Ruth Ann Hager, C.E.T.**D-641<br>Ben Hyatt Certified Deposition |
| 6 | | Reporters<br>17835 Ventura Boulevard |
| 7 | | Suite 310<br>Encino, California  91316 |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |

Page                                                                            3

1    SAN FERNANDO VALLEY, CALIFORNIA, THURSDAY, AUGUST 23, 2018

2                              11:03 A.M.

3                              --oOo--

4            THE CLERK:  Please rise and come to order.  This

5    court is now in session, the Honorable Maureen Tighe,

6    Bankruptcy Judge, presiding.

7            THE COURT:  Good morning.  Okay.  I think there's

8    only one case on today, Auckland Senior Care, LLC.

9    Appearances?

10           MR. HEYWOOD:  William T. Heywood, Your Honor, on

11   behalf of the debtor.  I am not substituting for the case

12   yet because I was just consulted and I'm on CourtCall.

13           THE COURT:  Okay.  And in court.

14           MS. COPELIN:  Avis Copelin, debtor

15   representative.

16           THE COURT:  Okay.  I had two questions about this

17   case which is why I set it.  The first was why it shouldn't

18   be dismissed because there was no counsel, since it's a

19   corporation, and the second was whether there's any

20   patients in the senior care facility.

21           MS. COPELIN:  Well, I have the -- I did consult

22   with the attorney and he said he's willing to come on

23   board, as long as you'll allow me to stay in, and he can

24   speak to you about that directly.  He does need time to get

25   up to speed.  And there are no -- it's not a healthcare --



Page                                                                    4

1  just to clarify, it's not a healthcare facility.  The

2  senior care home is a residential -- you know, it's for

3  residential use, not healthcare use, and no, there aren't

4  any people in it at this point.  I'm preparing to do that,

5  but I have not put people in there yet.

6            THE COURT:  Is there anybody living -- what is

7  the asset of the LLC?

8            MS. COPELIN:  The -- what do you mean?

9            THE COURT:  What are the assets of the -- this

10  Auckland Senior Care, LLC?

11            MS. COPELIN:  Well, it's set up to be a

12  residential care facility, which we discussed previously,

13  and I've been in the process of doing that, but I really

14  didn't want to get anybody in that property until the

15  foreclosure issue has been resolved.

16            THE COURT:  Okay, I have your schedules here.  So

17  there's no -- is there anybody living in the property?

18            MS. COPELIN:  Yes, there's people in the

19  property, but not residents for the care facility.

20            THE COURT:  Who are the people living in the

21  property?

22            MS. COPELIN:  My son and a gentleman that helps

23  with maintaining the property and another woman that is --

24  she will be helping when we get set up and she's also been

25  helping to maintain the property.

Page                                                                    5

1            THE COURT:  Okay.  I -- as you know, we had

2    another case together and I note that there were two other

3    cases where you filed corporations without counsel, PMP

4    Real Estate Solutions, LLC, that's 18-11647, that was

5    before Judge Barash, and then there was Placemark

6    Properties, LLC, 18-12964 in front of Judge Kwan.  Do you

7    recall both those cases?

8            MS. COPELIN:  Yes.

9            THE COURT:  And in both those cases the Court

10   told you not to file these LLC's without counsel.

11           MS. COPELIN:  Yes.  It was emergency situations,

12   Your Honor.

13           THE COURT:  Well, what was the emergency?

14           MS. COPELIN:  Well, the emergency for the other

15   two properties was foreclosures.  There was imminent

16   foreclosures.  And in this situation I just found out,

17   literally the day before I filed bankruptcy, that the

18   lender secured a default judgment and a writ in unlawful

19   detainer court without my knowledge.  And I literally did

20   not -- and I had a hearing on calendar and I didn't want to

21   end up in a position of losing the property.

22           I knew that in order for me to file for an

23   automatic stay with you I was going to have to come before

24   the Court and there wasn't enough time to do that because

25   the writ, to my -- based on what I was told, had been

Page                                                                          6

1   issued several weeks before I even found out.  I think it
2   was at least two weeks before I found out.  And just to let
3   you know, the reason why in my opinion it was an emergency
4   is because since I've last seen you, not only were the
5   issues that we discussed the same, and that is that there
6   was a usurious loan, so they really didn't have a legal
7   right to file a foreclosure.  But I also found out, about a
8   little bit less than a year ago, it was shortly after my
9   case was dismissed, that they're not even licensed
10  properly.
11         So I tried multiple times to get attorneys to
12  represent me in civil court and none of the attorneys that
13  I found knew anything about lender liability law.  And it
14  was one challenge after another and I was paying them and
15  they weren't doing what they were supposed to do, so I
16  ultimately ended up filing a complaint with the Department
17  of Business and Oversight.  And when I filed that
18  complaint, they forwarded it to the Department of Real
19  Estate.  The Department of Real Estate has an ongoing
20  investigation.
21         And my concern is that if they're not licensed
22  and they have a usurious loan, they don't have -- they did
23  not have a legal right to foreclose on my property.  And
24  all I'm looking for at this point is to give the Department
25  of Real Estate an opportunity to finish the investigation

Page                                                                          7

1  so that I can have documented evidence that they were not

2  -- that they were operating outside of the law.  So the

3  point I'm trying to make, Your Honor, is they didn't have

4  any right to come in here; they didn't have a right to

5  foreclose; they didn't have a right to come in here and get

6  a relief from stay.  They're abusing their power, and all

7  I'm trying to do is protect my property because they're not

8  following the law.

9          THE COURT:  Nobody's come in in this case for a

10 relief from stay.  You must --

11         MS. COPELIN:  I'm sorry?

12         THE COURT:  Nobody's come in in this case for a

13 relief of stay.

14         MS. COPELIN:  No, in the other case --

15         THE COURT:  Oh, well, that's --

16         MS. COPELIN:  -- the previous case.

17         THE COURT:  So this is the same property that was

18 involved in the previous case?

19         MS. COPELIN:  Yes.

20         THE COURT:  So you transferred it to a different

21 LLC?

22         MS. COPELIN:  No.  The LLC that is -- I don't

23 know if you remember any --

24         THE COURT:  Oh, so this is the same --

25         MS. COPELIN:  -- of the details, but --



Page                                                                        8

1            THE COURT:   -- LLC from our case?

2            MS. COPELIN:  No, it's a different LLC, but when

3    you -- when I'm operating the home care, that is, you know,

4    by legal standards, and attorneys recommend that the

5    property should not own the entity that's the business.

6    What happens is the business rents from the owner, so the

7    business is separate from the owner of the property.

8            THE COURT:  Yeah, you know, you -- you're doing

9    the same thing you did in the last case; one, you're

10   ignoring court orders.  If there was relief from stay in

11   the last case, that's a valid order, whatever defenses --

12   you need to bring the litigation in Superior Court if you

13   think it's a wrongful foreclosure.  They already got the

14   foreclosure.  You're here way too late.  And, two, you

15   can't be ignoring orders of the Court.  Two judges now have

16   dismissed cases and told you you can't file corporations

17   without counsel --

18           MS. COPELIN:  No, my case --

19           THE COURT:   -- and there's a reason for that --

20           MS. COPELIN:  -- with Judge Kwan --

21           THE COURT:   -- is because what you're trying --

22           MS. COPELIN:  -- wasn't dismissed, Your Honor.

23           THE COURT:  I granted --

24           MS. COPELIN:  Judge Barash --

25           THE COURT:  -- relief from stay.

Page                                                                9

1          MS. COPELIN:  -- dismissed my court --

2          THE COURT:  I have the transcript here --

3          MS. COPELIN:  -- my case.

4          THE COURT:  -- and Judge Kwan told you you can't

5    file a case without counsel.

6          MS. COPELIN:  But Judge Kwan didn't dismiss my

7    case.  That case did not get dismissed because of that.

8          THE COURT:  But he advised you you can't be doing

9    that.

10         MS. COPELIN:  Yes, he did.

11         THE COURT:  I have the transcript.

12         MS. COPELIN:  Yes.  Judge Barash did dismiss it.

13         THE COURT:  You -- the reason is, is what you're

14   trying to do is probably not going to be effective in a

15   Chapter 11 and needs certain expertise to do properly.  And

16   you've got to come in with a plan that shows you can really

17   do it and be really specific.  And I think what you're

18   explaining right now is not sounding convincing.  And if

19   you're doing it on behalf of a corporation, you need an

20   experienced Chapter 11 lawyer who's going to really come in

21   and be ready to do it.  And there's a reason for the rule.

22   It's not just full employment for lawyers.  It's because

23   it's a corporation, it's a separate entity, and it needs

24   expertise or reorganization.  Otherwise, you're just

25   borrowing the automatic stay, which is abusive.  You've got

Page                                                                        10

1   to really be planning on reorganizing.

2           MS. COPELIN:  Can I say something?  I don't have

3   to be in civil court.  My options are to let the Department

4   of Real Estate finish this investigation or -- well, it was

5   originally going to be the Department of Business and

6   Oversight, but they referred it to the Department of Real

7   Estate.  And I just want to make it clear, Your Honor, that

8   that's evidence right there, that they're the ones that

9   have been abusing the law, not me.  This would not be under

10  investigation by this agency if they had done what they

11  were supposed to do.

12          THE COURT:  Well, I don't --

13          MS. COPELIN:  There wouldn't be an ongoing --

14          THE COURT:  They have --

15          MS. COPELIN:  -- investigation.

16          THE COURT:  -- to do an investigation when

17  there's a complaint, and I don't have any evidence of --

18  that there's actually anything there; I mean, I don't,

19  so --

20          MS. COPELIN:  I have documentation of them

21  letting me know that there's an investigation, and the

22  reason why there is evidence there is because they would

23  have closed it by now if there was no evidence of

24  wrongdoing.  That's the whole point.

25          THE COURT:  I don't know that necessarily to be

Page                                                                          11

1    the case.

2         MS. COPELIN:  Well, can I get something in

3    writing from them?

4         THE COURT:  No, their investigation.  They have

5    to do it and come up with their conclusions.  An

6    investigation is just that, that they --

7         MS. COPELIN:  Well --

8         THE COURT:  -- think there's something to look

9    into, but then you've got to come up with a legal theory

10   that gives you the ability to get relief from this Court.

11   They're -- I can't take notice that they have an

12   investigation, therefore, this lender must be bad.  There

13   was a legal foreclosure, so you're going to have to go in

14   and void that first.

15        MS. COPELIN:  Your Honor, if you don't mind my

16   saying, the whole purpose of me voiding it is to have this

17   investigation completed first.  I have a legal right to be

18   represented by one of these agencies, but they have to

19   finish their investigation in order for them to be able to

20   do what they need to do.  So it's the same -- I basically

21   have recourse, either through the agency investigation or

22   through the courts.  And I -- as I said to you, I have not

23   been able to find an attorney that is as knowledgeable as

24   they need to be to represent me in civil court, which is

25   why I ultimately went to the agencies for the

Page                                                                    12

1  investigation.  And all I'm asking is for the opportunity

2  to let this investigation play out, which is no different

3  from me going to civil court.

4          And the point that I want to make is, if they're

5  not licensed properly, which I know they're not, and that's

6  the reason why there's an investigation -- I don't know if

7  you understand this investigative process.  It would have

8  been closed by now if there wasn't any evidence of

9  wrongdoing.  That's the whole point of why it's ongoing.

10  And that's why I was saying if I need to get something in

11  writing from them that's letting you know that there is an

12  investigation because there's evidence of wrongdoing.

13  Because if that's -- once that's determined, then I'm able

14  to get that foreclosure overturned, because now the agency

15  has made the determination through their investigation.

16  That's the whole purpose of it.  And it's not -- it

17  shouldn't take as long as a lawsuit would.  It's the same

18  thing.

19          THE COURT:  Well, I think you can get a lawyer

20  and file a new case with proper procedures and do it the

21  way you're supposed to do it, but this -- you're operating

22  under a corporate shell, so you have to follow the rules

23  for a corporation.  It's simply not an individual case.  So

24  Mr. Heywood has not put in an appearance.  He's welcome to

25  put one in in the next case, but he's got to file -- you

Page                                                                    13

1   have to file it with an attorney.  I can't be ignoring the

2   fact that you've had numerous cases where you've known that

3   and numerous cases that have gone nowhere.  You have to

4   come in with a proper case with an attorney.  So I'm going

5   to dismiss this one, and if you want to work it out with

6   somebody for a Chapter 11 that's legitimate, you can file

7   again, but --

8            MS. COPELIN:  Well, Your Honor, there's a

9   legitimate Chapter 11 --

10           THE COURT:  No, it isn't, if you --

11           MS. COPELIN:  -- because they don't have a legal

12  right to be in court.

13           THE COURT:  You have not followed the rules

14  and --

15           MS. COPELIN:  They haven't either --

16           THE COURT:  -- you've been advised of the rules.

17           MS. COPELIN:  -- Your Honor.

18           THE COURT:  I know, but you're the one asking for

19  relief from this Court and I don't have any evidence of

20  that.  You can't use the Bankruptcy Court without following

21  the rules, and they have to go -- you have to go to

22  Superior Court and fight the foreclosure or fight the

23  unlawful detainer.  You can't just use time with the

24  automatic stay.  It's just not a proper use of the

25  Bankruptcy, if you're not planning on doing it by the

Page                                                                    14

1  rules.  So you get experienced Chapter 11 counsel and come

2  in and do it properly, but you can't just keep filing to

3  delay stuff.  We're not --

4          MS. COPELIN:  I'm not filing to delay anything.

5  I'm filing to -- there's a reason for an automatic stay.

6  It's to protect my property from people like this lender

7  and those other lenders that are abusing -- it's like I'm

8  being penalized --

9          THE COURT:  You had --

10         MS. COPELIN:  -- and they're the ones abusing the

11 law.  How is that fair --

12         THE COURT:  Well --

13         MS. COPELIN:  -- that they're abusing the law and

14 I'm just trying to protect my property?

15         THE COURT:  You need -- you are protecting the

16 property for a corporation.  The corporation needs a lawyer

17 and you've been told about that a few times.  The relief

18 from stay motion, there needs to be that information

19 presented, the Department of Real Estate or whoever's doing

20 the investigation would need to come in and say, "We need

21 time to do the investigation."  You --

22         MS. COPELIN:  Well, can I --

23         THE COURT:  -- need to talk to them.

24         MS. COPELIN:  -- at least get a continuance to

25 get something from them in writing?  I can show you the

Page                                                                    15

1   letters that I received from them, that there's an

2   investigation.

3         THE COURT:  If you file again with an attorney,

4   I'll look at it, but --

5         MS. COPELIN:  Can at least show an emergency

6   filing?

7         THE COURT:  No.  You've been told that twice.

8         MS. COPELIN:  No, I'm not saying -- I'm saying,

9   can I do an emergency filing with the attorney, not me.

10        THE COURT:  With counsel.

11        MS. COPELIN:  I'm saying if my attorney comes in

12  with an emergency filing, because I was told by my attorney

13  that I should not -- you know, that I needed to wait

14  whatever, the 21 days.  My other attorney told me I needed

15  to do that on regular motion because I was going to do

16  it -- you know, go through the Chapter 11, but he told me I

17  needed to do a regular motion.  I'm like, I don't have that

18  kind of time.  And I don't want you to kick me out of court

19  if I come in and file an emergency.  That's the only reason

20  why I'm asking.

21        THE COURT:  I'm not going to say what I'm going

22  to do in any future case --

23        MS. COPELIN:  Okay.

24        THE COURT:  -- because I have to see what the

25  case is -- looks like, but at this point I think you need

Page                                                                    16

1   legal advice because I think what you're trying to do is

2   not looking like it would be successful without proper

3   legal advice.  And there's a lot of people that think they

4   can void foreclosures who end up not being able to, so if

5   you don't do it right you're just wasting your time here.

6           MS. COPELIN:  Your Honor, it's really unfair,

7   though.

8           THE COURT:  It --

9           MS. COPELIN:  It's really unfair that this lender

10  is abusing the law and I'm the person who is being

11  penalized.

12          THE COURT:  It may be, but --

13          MS. COPELIN:  And what's going to --

14          THE COURT:  -- who took the loan out?

15          MS. COPELIN:  -- happen when -- what's going to

16  happen when -- right, but the problem is that I tried

17  multiple times to refinance that loan, and each lender that

18  I went to refused to refinance the loan on their terms.

19  You want to know why?  Because they said these lenders are

20  abusing the system and they refused to pay them, because

21  they would not -- they were basically demanding the

22  interest that they were not allowed by law.

23          THE COURT:  If you --

24          MS. COPELIN:  So I'm in a --

25          THE COURT:  -- come back here --

Page                                                              17

1            MS. COPELIN:  -- Catch-22.

2            THE COURT:  If you come back here, you need to

3    bring evidence of this investigation and a statement from

4    the agency.

5            MS. COPELIN:  I already have it in my purse.

6            THE COURT:  Okay.  File that and come in with

7    counsel if you're going to be using this corporate entity.

8            MS. COPELIN:  With this one or the other one?

9    I'm confused.

10           THE COURT:  Anything you come in with, if

11   there --

12           MS. COPELIN:  Okay.

13           THE COURT:  I need evidence and I need

14   representation of counsel.  If you're going to operate

15   under a corporate entity, that's the rules.

16           MS. COPELIN:  So Your Honor, if I have to refile,

17   can't I just have the opportunity -- the attorney has

18   advised you that he's willing to come on board.  Can't I

19   just have the opportunity to put this document --

20           THE COURT:  He hasn't come on board and he hasn't

21   filed --

22           MS. COPELIN:  Can you ask him --

23           THE COURT:  -- an employment application to

24   show -- I need Mr. Heywood --

25           MS. COPELIN:  -- if he's willing to do so?

Page                                                              18

1          THE COURT:  I would need an employment

2    application to see the ability to do a case like that.  I

3    think you came in in some of the other cases and I don't

4    see any success there, so I'm going to have to see that

5    this is something that's really going to go somewhere.  So

6    file your case and show me what you're going to do.

7          MS. COPELIN:  Can I ask a question?  If I'm

8    filing a new -- I'm sorry, Your Honor.  I just don't want

9    to keep coming in court and getting kicked out because

10   these people are abusing power and it's not fair.

11         THE COURT:  Well, I told you in the last case, I

12   need evidence and I need --

13         MS. COPELIN:  I understand --

14         THE COURT:  -- somebody with a real game plan.  I

15   don't --

16         MS. COPELIN:  -- and I just have a question.  How

17   am I supposed to come in and bring you this paperwork if I

18   file a Chapter 7, because a Chap -- if I go file again, no

19   matter what Chapter I file, I've got to start with a

20   petition.  So once I file a petition, I can't file these

21   documents with a petition, so I'm just trying to figure out

22   how I'm supposed to get you this paperwork.

23         THE COURT:  No, it's got to be a Chapter 11 if

24   you're reorganizing.  You can't reorganize in Chapter 7.

25         MS. COPELIN:  But how am I supposed to file this



Page                                                                    19

1  paperwork with a petition?  That's not possible.

2          THE COURT:  I can't give you legal advice.  An

3  attorney would have to figure out how to do that or

4  whatever kind of motion.

5          MS. COPELIN:  Okay.  So that's what you're

6  saying, I just need to file -- okay, that I get.  Okay.

7          THE COURT:  I can't give advice on --

8          MS. COPELIN:  I know how to file a motion.  I

9  just thought that you were saying that I was supposed to

10 file it when I file the case, you know --

11         THE COURT:  No.

12         MS. COPELIN:  -- when I file the petition, so

13 that's what I wasn't understanding.

14         THE COURT:  No.  If the petition is filed

15 properly with counsel --

16         MS. COPELIN:  No, I get it.

17         THE COURT:  -- you can wait and see when that

18 comes up at the status conference --

19         MS. COPELIN:  Right.

20         THE COURT:  -- or on a motion.

21         MS. COPELIN:  I understand.  I misunderstood you,

22 just to be clear.

23         THE COURT:  Yeah.

24         MS. COPELIN:  I thought you were telling me that

25 I needed to have that paperwork when I file a petition and

Page                                                                      20

1   I know that's not possible, so I was just --

2            THE COURT:  Okay.

3            MS. COPELIN:  -- trying to understand what you

4   meant --

5            THE COURT:  No, it doesn't --

6            MS. COPELIN:  -- by that.

7            THE COURT:  -- have to be filed with the

8   petition.

9            MS. COPELIN:  I understand.  Okay.

10           THE COURT:  All right.  Okay.  Dismissed.  Good

11  luck.

12           MS. COPELIN:  Thank you.

13  (End at 9:23 a.m.)

14                       * * * * * * * *

15           I certify that the foregoing is a correct

16  transcript from the electronic sound recording of the

17  proceedings in the above-entitled matter.

18

19  _____      Date:  9/22/2018

20  RUTH ANN HAGER, C.E.T.**D-641

21

22

23

24

25

 **This page is part of your document - DO NOT DISCARD** 



## 20171406908



**Pages: 0004**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**12/06/17 AT 08:00AM**

| | |
|---|---:|
| FEES: | 24.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 24.00 |





**L E A D S H E E T**



201712060140012

00014609581



008767225

**SEQ:
01**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**

91206655-jw 

*E400070*

WHEN RECORDED MAIL TO:

NPI DEBT FUND I LP, A CALIFORNIA LIMITED PARTNERSHIP
667 SAN NICOLAS DR., STE 280
NEWPORT BEACH, CA 92660

MAIL TAX STATEMENTS TO

Same as above

APN: 2420.033-008

Space above this line for recorder's use only

Trustee Sale No. 229-066587          Loan No. 15-91602C     Title Order No. 91206655

## TRUSTEE'S DEED UPON SALE

APN 2420-033-008
The undersigned grantor declares:
1) The Grantee herein was the foreclosing beneficiary.
2) The amount of the unpaid debt together with costs was.................$689,128.30
3) The amount paid by the grantee at the trustee sale was .................$405,000.00
4) The documentary transfer tax is.....................................$_0.00_____
5) Said property is in the City of TOLUCA LAKE

THIS CONVEYANCE IS TAKEN AS A RESULT OF A FORECLOSURE SALE AND THE CONSIDERATION (CREDIT BID) DOES NOT EXCEED THE UNPAID DEBT. THERE IS NO TRANSFER TAX DUE R & T CODE 11926.

PLM LOAN MANAGEMENT SERVICES, INC (herein called Trustee), as the duly appointed Trustee or substituted Trustee under the Deed of Trust hereinafter described, does hereby grant and convey, but without covenant or warranty, express or implied, to NPI DEBT FUND I LP, A CALIFORNIA LIMITED PARTNERSHIP (herein called Grantee), all of its right, title and interest in and to that certain property situated in the County of LOS ANGELES, State of California, described as follows:

SEE EXHIBIT "A" FOR LEGAL DESCRIPTION

RECITALS:
This conveyance is made pursuant to the powers conferred upon Trustee by that certain Deed of Trust dated 10-30-2015 and executed by OLIGARCH CAPITAL, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, as Trustor, and Recorded 11-06-2015, Instrument 20151361333 of official records of LOS ANGELES County, California, and after fulfilling the conditions specified in said Deed of Trust authorizing this conveyance.

Default occurred as set forth in a Notice of Default and Election to Sell which was recorded in the Office of the Recorder of said County, and such default still existed at the time of sale.

All requirements of law regarding the mailing of copies of notices or the publication of a copy of the Notice of Default or the personal delivery of the copy of the Notice of Default or the posting of copies of the Notice of Sale or the publication of a copy thereof have been complied with.

Trustee, in compliance with said Notice of Trustee's Sale and in exercise of its powers under said Deed of Trust, sold the herein described property at public auction on **11-30-2017**. Grantee, being the highest bidder at said sale, became the purchaser of said property for the amount bid being **$405,000.00** in lawful money of the United States, or by credit bid if the Grantee was the beneficiary of said Deed of Trust at the time of said Trustee's Sale.

DATE: December 01, 2017

**PLM LOAN MANAGEMENT SERVICES, INC, As Trustee**

Elizabeth A. Godbey, Vice President

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF California
COUNTY OF Santa Clara

On December 01, 2017 before me, Ellen Jeffrey Notary Public personally appeared **Elizabeth A. Godbey**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
*I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.*
WITNESS my hand and official seal.

Ellen Jeffrey, Notary Public in and for said County and State

ELLEN JEFFREY
Notary Public – California
Santa Clara County
Commission # 2180341
My Comm. Expires Feb 13, 2021

## EXHIBIT A

### LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF **LOS ANGELES**, STATE OF **CALIFORNIA**, AND IS DESCRIBED AS FOLLOWS:

THAT PORTION OF LOT 90 OF TRACT NO. 10619, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 162 PAGES 23 AND 24 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, LYING NORTHERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE WESTERLY LINE OF SAID LOT, DISTANT ALONG SAID WESTERLY LINE, 25.41 FEET SOUTHERLY FROM THE NORTHWESTERLY CORNER OF SAID LOT; THENCE EASTERLY IN A DIRECT LINE TO A POINT IN THE CURVED EASTERLY LINE OF SAID LOT, DISTANT ALONG SAID CURVED EASTERLY LINE, 42.89 FEET SOUTHERLY FROM THE NORTHEASTERLY CORNER OF SAID LOT 90.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES, LYING BELOW A DEPTH OF 500 FEET, WITHOUT THE RIGHT OF SURFACE ENTRY, AS RESERVED IN INSTRUMENTS RECORD DECEMBER 10, 1968 AS INSTRUMENT NO. 2802, OFFICIAL RECORDS.

Assessor's Parcel Number: 2420-033-008

Begin forwarded message:

From: Avis Copelin ████████@████
Date: June 9, 2016 at 6:34:30 PM PDT
To: TJ Coveyou ████████████████>
Cc: Luiz Ortiz <████████████████>, Christian Copelin <████████████>, Sara Miller ████████████████>, Humberto Arredondo <hum████████████████> steven tamer ████████████████>
Subject: Re: Update on Property - 4545 Auckland Ave

Hi TJ. I did not hear back from you today. Please provide an update at your earliest convenience. It would be greatly appreciated.

Thanks.

Avis Copelin
████████████

Sent from my iPad

On Jun 8, 2016, at 4:06 PM, TJ Coveyou ████████████████> wrote:

Hi Avis,

Thanks for reaching out.

I have reviewed the below and the attached estimated HUD. What I'm not sure that you are aware of is that we have already made significant accommodation waiving default interest when we sent the demand letters. Per your paragraph 9 of both of your Notes, default interest of 12% is applied on top of your normal interest rates.

Since you missed your March 1 payment, your Notes were in default on March 6. We could have demanded the an additional default interest payment of approximately $39,000 which we have waived. I appreciate the suggestion that we put a 2nd on this, but unfortunately our mandate is that we need to control the senior lein.

I'm happy to schedule a call with your attorney if more clarification is needed, but you may want to approach the brokers and other parties in this deal to see if they can close the gap a bit.

Thanks, TJ

From: Avis Copelin ████████████████n]
Sent: Tuesday, June 7, 2016 9:44 PM
To: Luiz Ortiz ████████████████
Cc: Christian Copelin ████████████████>; Sara Miller ████████████████>; tj.coveyou@████████m; Humberto Arredondo <hum████████████████n>; steven tamer ████████████████>
Subject: Re: Update on Property - 4545 Auckland Ave

Hi Luiz. Per out telephone conversation today; I am following up to confirm the information that we discussed. I am also copying my attorney on this communication, as well. Attached please find a copy of the estimated closing statement and Note for your review.

I would like to apologize for the delay in getting back to you. I did not receive the expected documentation that I intended to send to you until the end of day. Furthermore, I was advised that I was scheduled to sign loan docs today so I preferred to wait to get back to you after I had docs in hand and had signed; for verification purposes due to the previous issues associated with closing this loan.

I did sign my loan docs tonight. My loan amount is 1.190M. I was originally approved for a 1.3M loan amount; however, I was advised that the lender decided to cut the loan amount at some point prior to drawing docs. As is indicated on the attached documentation, I am able to fully repay the principal amount of 1.1M that is due on your loans; however, I no longer have the ability to fully repay the interest and late payments that are due. My required closing costs for the new loan are just over $81,500. Despite the repeated efforts by my broker; the lender has indicated that the loan amount is not negotiable at this point. The remaining escrow balance would be under 10K which I would like to hold to cover expenses for minor maintenance and improvements on the property.

I am requesting your company's cooperation preferably by accepting the principal owed as the payoff amount that is due; or in the alternative, subordinate a small second to cover the cost of interest and late payments owed. Based on my estimated closing statement, the accrued interest due through 6/15/2016 for the loan is $66,527.39.

The funds for this loan have been set aside by my lender; we are now in line for docs and will be funded within 3 days. With your company's cooperation, I would appreciate the opportunity to close this loan. Your prompt attention to this matter is requested. Please contact either myself at the number below or my attorney at your earliest convenience. My attorney contact info is as follows: Steven Tamer ▉▉▉▉▉▉▉▉. In addition, please feel free to contact the lender's escrow officer as follows:

Amber (Escrow Officer)
Savvy Escrow Works Inc
Phone - ▉▉▉▉▉▉▉▉
email - ▉▉▉▉▉▉▉▉om
Escrow Number - 4936
Loan Number - RMF30468


Avis Copelin
▉▉▉▉▉▉▉▉



**This page is part of your document - DO NOT DISCARD**



# 20151361333



Pages:
0016

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**11/06/15 AT 08:00AM**

| | |
|---|---|
| FEES: | 121.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 121.00 |



**L E A D S H E E T**



201511060140003

00011344681



007208202

**SEQ:**
**17**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**          T52

RECORDING REQUESTED BY

WHEN RECORDED MAIL TO

NAME  ARCH LOANS SPE LLC

MAILING  567 SAN NICOLAS DR STE 250

CITY, STATE ZIP CODE  NEWPORT BEACH
        CA  92660



11/06/2015

*20151361333*

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

## TITLE(S)

DEED  OF  TRUST

98820580FL9B                                                              3

WHEN RECORDED, RETURN TO:

NPI Debt Fund I, LP
567 San Nicolas Drive Suite 280
Newport Beach, CA 92660

APN No 2420-033-008 (4343 Auckland Avenue, 91602)                    Above Space for Recorder's Use

## DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF
## LEASES AND RENTS AND FIXTURE FINANCING STATEMENT

THIS DOCUMENT CONSTITUTES A FIXTURE FILING IN ACCORDANCE WITH SECTION 9402 OF THE
CALIFORNIA COMMERCIAL CODE (THE "California Commercial Code")

THIS DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS AND
FIXTURE FINANCING STATEMENT ("Deed of Trust"), made effective as of October 30, 2015, by Oligarch
Capital, LLC, a California Limited Liability Company ("Trustor"), whose address for purposes of this Deed of
Trust is 10153 1/2 Riverside Dr. #189 Toluca Lake, CA 91602 (the State of California is hereinafter sometimes
referred to as the "State"); TO AND IN FAVOR OF PLM Loan Management, Inc. ("Trustee"); FOR THE
BENEFIT OF NPI Debt Fund I, LP, a California Limited Partnership (collectively, the "Beneficiary"), whose
address is 567 San Nicolas Drive Suite 280 Newport Beach, CA 92660.

### W I T N E S S E T H :

To secure the payment of a debt described below (the "Debt"), Trustor hereby grants, bargains, conveys,
transfers, and assigns to Trustee, in trust, WITH POWER OF SALE, all of the real property described in Exhibit
"A" attached hereto (the "Premises") and the buildings, structures, additions, enlargements, lot line adjustment
additions, extensions, modifications, repairs and improvements now or hereafter located thereon (the
"Improvements");

TOGETHER WITH: All right, title, interest and estate of Trustor now owned or hereafter acquired in the
following property, rights, interests, and estates (collectively called the "Trust Property"):

(a) All easements, rights-of-way, strips of land, streets, alleys, passages, sewer rights, mineral rights, water
rights and powers, and all estates, rights, titles, interests, privileges, tenements, hereditaments and appurtenances of
any nature, in any way belonging, relating or pertaining to the Premises and the reversion and reversions,
remainder and remainders, and all land laying in the bed of any street, road or avenue, opened or proposed, in front
of or adjoining the Premises to the center line thereof and all the estates, rights, titles, interests, dower and rights of
dower, courtesy and rights of courtesy, property, possession, claim and demand, both in law and in equity, of
Trustor in the Premises and every part thereof and all appurtenances thereto;

(b) All machinery, furniture, equipment, fixtures, material, appliances and other articles of personal
property of every kind owned by Trustor, or in which Trustor has an interest, located upon the Premises, and
appurtenances thereto, and usable for the generation and distribution of air, water, heat, electricity, light, fuel or
refrigeration, or for ventilating or air conditioning purposes, or for sanitary or drainage purposes, or for the
exclusion of vermin or insects, or for removal of dust, refuse or garbage, and such machinery, furniture, equipment,
fixtures and other articles of personal property which consist of all appliances, awnings, window shades, drapery
rods, brackets, screens, floor coverings, incinerators and carpeting used in the operation of the Premises and
Improvements (and all other personal property, either similar or dissimilar to the foregoing usable in the operation
of the Premises and Improvements and located in and on it), together with all replacements and substitutions
therefor, now owned or hereafter acquired by Trustor and located in or on said Premises and Improvements,
together with all materials intended for construction, reconstruction, alteration, and repair of the Improvements
(hereinafter collectively called the "Equipment"), together with all condemnation awards and rights under
insurance policies and Leases described below pertaining to said Premises or the Improvements now or hereafter
located thereon;

(c) All awards or payments, including interest, which may be made as to the Trust Property, whether from
the exercise of the right of eminent domain, constructive taking or for any other injury to or decrease in the value
of the Trust Property (collectively, "Awards");

(d) All leases and other agreements affecting the use, enjoyment or occupancy of the Trust Property, (the
"Leases"), if any, and all rents and security deposits payable under the Leases, and other deposits, issues and
profits from the Trust Property (the "Rents");

(e) All Policies (as defined herein) and their proceeds thereof and any unearned premiums on any
insurance policies covering the Trust Property, including, the right to receive and apply the proceeds of any
insurance, judgments, or settlements made in lieu thereof, for damage to the Trust Property, whether such
insurance is or is not required by this Deed of Trust;

(f) All utility deposits made to obtain or maintain utility services to the Premises or the Improvements;

(g) Any amounts in any escrow fund for the purposes of payment of taxes, insurance premiums or other
Impositions as to the Trust Property;

(h) The right, in the name and on behalf of Trustor, to appear in and defend any action or proceeding
brought as to the Trust Property and to commence any action or proceeding to protect the interest of Trustee and
Beneficiary in the Trust Property; and

COMMERCIAL DEED OF TRUST                                    1
Version 2/15/04 - Copyright, Doss & Page, Lawyers

**THIS DEED OF TRUST IS SECOND AND
SUBJECT TO A FIRST DEED OF TRUST
RECORDING CONCURRENTLY**

(i) The products and proceeds of the property described in the above (a) through (h) inclusive.

      **TO HAVE AND TO HOLD** the Trust Property upon and subject to the trusts and agreements set forth in this Deed of Trust.

    1.    <u>Secured Indebtedness.</u>  This Deed of Trust is given to secure the payment and performance of the following obligations, indebtedness, and liabilities (the "**Obligations**"): (a) all Obligations of Trustor under the Promissory Note of this date payable to Beneficiary, in the principal amount of three hundred thirty thousand only in US Dollars ($330,000.00), as well as any other substituted note and all modifications, renewals, or extension of the note (the "**Note**," and the payee and all subsequent holders of the Note are collectively the "**Beneficiary**" and the transaction creating the Note is the "**Loan**"); (b) all Obligations under this Deed of Trust as it may be amended from time to time, (c) all present and future loans, advances, or other extensions of credit obtained by Trustor from Beneficiary, and all promissory notes evidencing such present or future loans, advances, or other extensions of credit, including Trustor's Obligations under any present or future loan or credit agreement executed by Trustor, including the Assignment of Lessor's Interest in Leases and Rents of the same date (the "**Assignment**"), including any other agreement granting additional security interests (collectively, "**Other Security Documents**"), and all liabilities that Trustor may now or in the future owe to Beneficiary.  Collectively the Obligations referred to above are called the "**Debt.**"

      Notwithstanding any provision of this Deed of Trust to the contrary, in no event shall this Deed of Trust secure the Obligations of Trustor or any Guarantor arising exclusively under (i) any guaranty of the same date (the "**Guaranty**") or (ii) any Environmental Certificate and Indemnity Agreement of the same date, given by Trustor or any other person to Beneficiary (the "**Environmental Indemnity**").  The definition of "Other Security Documents" shall not include the Guaranty or the Environmental Indemnity.

    2.    <u>Representations, Warranties and Covenants.</u>

      (a)  <u>Warranty of Title.</u>  Trustor warrants that Trustor has good title to the Trust Property and has the unrestricted right to grant the security interests given in this Deed of Trust and that Trustor presently possesses an unencumbered fee simple estate in the Premises and the improvements except for those shown in the title report for this transaction (the "**Permitted Encumbrances**"), and that this Deed of Trust is and will remain a valid and enforceable lien on and security interest in the Trust Property, subject only to the Permitted Encumbrances.  Trustor shall forever warrant, defend and preserve such title and the validity and priority of the lien of this Deed of Trust, subject to the Permitted Encumbrances, and shall forever warrant and defend the same to Beneficiary against the claims of all persons.

      (b)  <u>Representations and Covenants Concerning Loan.</u>  Trustor represents, warrants and covenants as follows:

      (i)  All certifications, permits, licenses and approvals, including certificates of completion and occupancy permits required for the legal use, occupancy and operation of the Trust Property as currently operated (collectively, the "**Licenses**"), have been obtained and are in good standing (including, without limitation, any applicable liquor license).  The Trustor shall keep and maintain all Licenses.  The Trust Property is free of material damage and is in good repair, and there is no proceeding pending for the total or partial condemnation of, or affecting, the Trust Property.

      (ii)  All of the Improvements which were included in determining the appraised value of the Trust Property lie wholly within the boundaries and building restriction lines of the Trust Property, and no improvements on adjoining properties encroach upon the Trust Property, and no easements or other encumbrances upon the Premises encroach upon any of the Improvements, so as to affect the value or marketability of the Trust Property except those which are insured against by the Beneficiary's policy of mortgagee's title insurance insuring the lien of this Deed of Trust.  All of the Improvements comply with all material requirements of any applicable zoning and subdivision laws and ordinances.

      (iii)  The Trust Property is not subject to any Leases other than the Leases described in the rent roll delivered to Beneficiary in connection with this Deed of Trust  No person has any possessory interest in the Trust Property or right to occupy the same except under and pursuant to the provisions of the Leases.  The current Leases are good standing.

      (iv)  The Trust Property is and shall at all times remain in compliance with all statutes, ordinances, regulations and other governmental or quasi-governmental requirements and private covenants now or in the future relating to the ownership, construction, use or operation of the Trust Property.

      (v)  There has not been committed by Trustor or, to Trustor's knowledge, any other person in occupancy of or involved with the operation or use of the Trust Property any act or omission affording the federal government or any state or local government the right of forfeiture as against the Trust Property or any part thereof or any monies paid in performance of Trustor's obligations under this Deed of Trust or any of the Other Security Documents.  Trustor hereby covenants and agrees not to commit, permit or suffer to exist any act or omission affording such right of forfeiture.

      (vi)  Neither the execution and delivery of the Note, this Deed of Trust, or the Other Security Documents, nor the Trustor's performance thereunder, nor the recordation of this Deed of Trust, nor the exercise of any remedies by Beneficiary, will adversely affect Trustor's rights under any of the Licenses.

      (c)  <u>Survival.</u>  The warranties of this Paragraph will survive foreclosure or enforcement of this Deed of Trust and shall run with the Premises.

    3.    <u>Insurance.</u>

      (a)  <u>Risks to be Insured and Policy Provisions.</u>  Subject to the provisions of <u>Paragraph 5</u> hereof, Trustor, at its sole cost and expense, will maintain or cause to be maintained the following:

Non-Order Search                           Page 23 of 82           Requested By: Gary Ricks , Printed: 10/26/2018 12:04 PM
Doc: 2015-1361333 TDR 11-06-2015

(i) Commercial general liability (including contractual liability) insurance ("CGL **Insurance**") covering any and all liability of the insured arising out of the ownership, maintenance, use or occupancy of the Trust Property, and all operations incidental thereto said insurance to have limits of not less than Five Million Dollars ($5,000,000.00) combined single limit per occurrence for bodily injury, personal injury and property damage liability;

(ii) Insurance ("**Building Insurance**") on all buildings, fixtures and improvements located on the Trust Property against "special perils" (including "ordinance or law coverage"), in amounts at least equal to the greater of: (x) the full replacement cost thereof (without deduction for depreciation) as such replacement cost shall be determined from time to time at the reasonable request of Beneficiary; or (y) unless prohibited by law, the unpaid principal amount of the Debt. The Building Insurance shall include a co-insurance waiver or agreed amount endorsement. Such insurance shall, during the course of any construction of additions to the Improvements, be on Special Form Builder's Risk 100% Completed Value Non-Reporting Form or other form approved by Beneficiary;

(iii) Insurance on personal property against fire and any peril generally included within the classification of "extended coverage" ("**Personal Property Insurance**") in amounts at least equal to the replacement value thereof;

(iv) Rental value or business interruption insurance (or a combination thereof as Beneficiary may require) ("**Rental Value or Business Interruption Insurance**") on all buildings, fixtures, improvements, and other constructions located on and forming a part of the Trust Property as above described (including parking and common areas) against loss by the perils covered by the Building insurance in amounts of not less than the amount of Trustor's annual gross income from the Trust Property or Trustor's debt service on the Trust Property (including required payments to the Escrow Fund), for twelve (12) months, whichever is greater. Such Rental Value or Business Interruption Insurance shall contain an endorsement extending the period of indemnity for not less than ninety (90) days after restoration of said buildings, fixtures and improvements is completed;

(v) If and whenever Trustor shall have employees, workers' compensation insurance as required by law and employer's liability insurance with limits of liability of not less than $100,000/$500,000/$100,000;

(vi) If the Trust Property is located in an area which has been identified by the Secretary of Housing and Urban Development as a flood hazard area and in which flood insurance has been made available under the National Flood Insurance Act of 1968 (the "Act"), Trustor shall keep the Trust Property covered by flood insurance ("**Flood Insurance**") up to the maximum limit of coverage available under the Act, but not in excess of the amount of the Debt; and

(vii) Such other insurance with respect to the Trust Property in such amounts and against such insurable hazards as Beneficiary from time to time may reasonably require ("**Additionally Required Insurance**").

All insurance required hereunder, including the CGL Insurance (the "**Policies**"), shall provide that coverage shall not be revised, cancelled or reduced until at least thirty (30) days' written notice of such revision, cancellation or reduction shall have been given to Beneficiary; be issued by insurance companies which are qualified to do business in the State, which have at least one of the following A.M. Best Co. combinations of Best's Rating and Best Financial Size Category: A-, XV; A, XIII; A+, IX; or A++, VIII; and which are satisfactory to Beneficiary in all other ways.

The CGL Insurance shall name Beneficiary as an additional insured; apply severally as to Trustor and Beneficiary (excepting the limits of liability); cover each of them as insureds in the same manner as if separate policies had been issued to each of them (excepting the limits of liability); contain no provisions affecting any rights which any of them would have as claimants if not so named as insureds; and be primary insurance with any other valid and collectible insurance available to Beneficiary constituting excess insurance.

The Building Insurance, Personal Property Insurance, Rental Value or Business Interruption Insurance, and Flood Insurance shall name Beneficiary as an additional insured; and have attached to them a Lender's Loss Payable Endorsement naming Beneficiary as Lender, a standard waiver of subrogation endorsement, a stipulated amount endorsement, and a full replacement cost endorsement.

(c) Delivery of Policy. Trustor will deliver to Beneficiary original binders or evidence of all required insurance to Beneficiary and Trustor shall promptly furnish to Beneficiary copies of all renewal notices and all receipts of paid premiums received by it. At least ten (10) days prior to the expiration date of a required policy, Trustor shall deliver to Beneficiary a renewal binder or evidence of insurance in a form satisfactory to Beneficiary.

(c) Assignment of Policy. If the Trust Property is sold at a foreclosure sale or if Beneficiary shall acquire title to the Trust Property, Beneficiary shall have all of the rights of Trustor to the Policies and the unearned premiums on them and to the proceeds resulting from any damage to Trust Property prior to such sale or acquisition.

(d) Notice of Damage or Destruction; Adjusting Loss. If any part of the Trust Property is damaged or destroyed by fire or other casualty, Trustor will promptly give written notice thereof to the insurance carrier and Beneficiary, and will not adjust any damage or loss which exceeds $10,000 unless Beneficiary joins in such adjustment; but if there has been no adjustment of any such damage or loss within four months from the date of occurrence and if an Event of Default exists at the end of such four-month period or at any time thereafter, Beneficiary may alone make proof of loss, adjust and compromise any claim under the policies and appear in and prosecute any action arising from such policies. In connection therewith, Trustor does hereby irrevocably

COMMERCIAL DEED OF TRUST
Version 2/15/04 - Copyright, Doss & Page, Lawyers                    3

authorize, empower and appoint Beneficiary as attorney-in-fact for Trustor (which appointment is coupled with an interest) to do any of the above in the name of Trustor.

(e) Application of Insurance Proceeds. All sums in excess of $10,000 paid under any insurance policies relating to the Building Insurance, Personal Property Insurance, Rental Value or Business Interruption Insurance, Flood Insurance or Additionally Required Insurance (collectively the "Proceeds"), shall be paid to Beneficiary which may, at its option (but subject to the provisions of this Paragraph), apply them, after first deducting Beneficiary's expenses incurred in the collection thereof, to the payment of the Debt, whether or not due and in such order of application as Beneficiary may determine, or to the repair, replacement, rebuilding or restoration of the Trust Property, in such manner as Beneficiary may determine. However, Beneficiary shall make all Proceeds (after first deducting therefrom Beneficiary's reasonable expenses incurred in collecting them) available to Trustor to reimburse Trustor for Trustor's reasonable costs of restoration, repair, replacement or rebuilding of the Improvements and Equipment, in accordance with procedures reasonably required by Beneficiary (and shall not be applied toward the payment of the Debt until after restoration and repair of the Improvements and Equipment) provided:

(i) There is no Event of Default;

(ii) Trustor has notified Beneficiary of Trustor's intention to perform such restoration or repair within thirty (30) days after adjusting the loss or casualty;

(iii) Beneficiary receives reasonably satisfactory evidence that the Premises and Equipment have been fully restored or that by application of the Proceeds will be fully restored to their condition prior to the damage or destruction, free and clear of all liens other than the Permitted Encumbrances;

(iv) If, in the reasonable judgment of Beneficiary, the Proceeds will be insufficient to restore the Improvements and Equipment to their condition prior to the damage or destruction, Trustor shall demonstrate to Beneficiary the availability of funds which, together with the Proceeds, are sufficient to restore the Improvements and Equipment to their condition prior to the damage or destruction; and

(v) There will, in the reasonable judgment of Beneficiary, remain sufficient time to complete the restoration or repair of the Improvements and Equipment prior to the Date of Maturity (as defined in the Note).

Any Proceeds remaining after reimbursement of Trustor for its costs of restoring the Improvements and Equipment, at Beneficiary's option, may be applied to partial prepayment of the Debt. Any such application of the Proceeds to the payment of the Debt shall be without prepayment premium or penalty, if any, otherwise applicable and shall not extend or postpone the due dates of the monthly installments under the Note or change the amount of such installments. Any remaining proceeds not applied to the Debt shall be paid to Trustor.

4.    Payment of Impositions. Subject to the payments in the manner provided in Paragraph 5 hereof and to Paragraph 8 relating to contests, Trustor shall pay when due all taxes (both real and personal), assessments, water charges, sewer charges, ground rents, maintenance charges and all other charges, including, without limitation, vault charges and license fees for the use of vaults, chutes and similar areas adjoining the Premises, now or hereafter levied or assessed or imposed against the Trust Property (the "Impositions"). Trustor will deliver to Beneficiary, upon request, evidence satisfactory to Beneficiary that the Impositions are not delinquent. Trustor shall not permit and shall promptly cause to discharged any lien or charge which becomes a lien or charge against the Trust Property, and shall promptly pay for all utility services provided to the Trust Property.

5.    Escrow Fund. At the option of the Beneficiary, Beneficiary may require Trustor to establish an Escrow Fund (defined below) sufficient to pay all Impositions and all insurance premiums for all Policies (the "Insurance Premiums") pursuant to this Deed of Trust. Initial deposits of Impositions and Insurance Premiums shall be made by Trustor to Beneficiary in amounts determined by Beneficiary in its discretion on the date hereof to be held by Beneficiary or its agent, in escrow. Additionally, Trustor shall pay to Beneficiary on the first day of each calendar month one-twelfth of an amount which would be sufficient to pay the Impositions and Insurance Premiums upon the due dates for them (the initial deposits and the amounts referred to in the previous sentence shall be called the "Escrow Fund"). Trustor agrees to notify Beneficiary immediately of any changes to the amounts, schedules and instructions for payment of any Impositions and Insurance Premiums and authorizes Beneficiary or its agent to obtain the bills for Impositions directly from the appropriate tax or insurance authority. The Escrow Fund and the payments of interest or principal or both under the Note shall be added and paid together. Provided there are sufficient amounts in the Escrow Fund and no Event of Default exists, Beneficiary shall pay the Impositions and Insurance Premiums when due with funds from the Escrow Fund. If the Escrow Fund is insufficient to pay the items set forth above, Trustor shall pay, upon demand, to Beneficiary, any shortage. Unless otherwise required by applicable law, no earnings or interest on the Escrow Fund shall be payable to Trustor.

6.    Liens. Subject to Paragraph 8 hereof relating to contests, the Trustor shall not create or permit any lien, encumbrance or charge on the Trust Property inferior to the lien of this Deed of Trust. Trustor shall pay, when due, the claims of: (i) all persons supplying labor or materials to or in connection with the Trust Property; and (ii) registered or certified surveyors or engineers, or licensed architects, or their professional consultants supplying professional services in connection with the Trust Property.

7.    Compliance with Laws. Subject to Paragraph 8 relating to contests, Trustor shall comply with all present and future statutes, laws, rules, orders, regulations and ordinances affecting the Trust Property, any part thereof or the use thereof and shall comply with all covenants, conditions and restrictions applicable to the Trustor which are contained in any documents constituting a Permitted Encumbrance

8.    Permitted Contests. The Trustor shall not be required to (i) pay any tax, assessment or other charge referred to in paragraph 4, (ii) discharge or remove any lien, encumbrance or charge referred to in Paragraph 6, or (iii) comply with any statute, law, rule, regulation or ordinance referred to in Paragraph 7, if

COMMERCIAL DEED OF TRUST
Version 2/15/04 - Copyright, Doss & Page, Lawyers

4

Trustor (a) contests, in good faith, the existence, the amount or the validity of the item, and (b) shall give such security to Beneficiary as may be reasonably demanded by Beneficiary to ensure compliance with the foregoing provisions of this Paragraph. Trustor shall give prompt written notice to Beneficiary of the commencement of any contest referred to in this Paragraph.

9.  **Condemnation.**

(a) Immediately upon receipt by Trustor of notice of the institution of any proceeding or negotiations for condemnation or other eminent domain proceeding (called "Taking"), Trustor shall give notice thereof to Trustee and Beneficiary. Trustee and Beneficiary may appear in any such proceedings and participate in any such negotiations and may be represented by counsel. Trustor, notwithstanding that Trustee and Beneficiary may not be a party to any such proceeding, will promptly give to Trustee and Beneficiary copies of all notices, pleadings, judgments, determinations and other papers received by Trustor therein. Trustor will not enter into any agreement permitting or consenting to the taking of the Trust Property, or any part thereof, or providing for the conveyance thereof in lieu of condemnation, unless Beneficiary has first consented thereto in writing, which consent shall not be unreasonably withheld or delayed. All Taking awards shall be adjusted jointly by Trustor and Beneficiary. All awards payable as a result of a Taking which exceed $10,000 shall be paid to Beneficiary. Beneficiary may, at its option, apply the proceeds, after first deducting its expenses incurred in the collection of them, to the payment of the Debt, whether or not due and in such order of application as Beneficiary may determine, or to the repair, replacement, rebuilding or restoration of the Trust Property, in such manner as Beneficiary may determine; provided, however, that any such application of any award payable as a result of a Taking, to the payment of the Debt, shall be without prepayment premium or penalty

(b) All Awards that exceed $10,000 shall be paid to Beneficiary. Beneficiary shall make all Awards (after first deducting Beneficiary's expenses to collecting the Award) available to Trustor to reimburse Trustor for its reasonable costs of restoration, repair, replacement or rebuilding of the Improvements; subject, however to conditions substantially similar to the conditions imposed under the terms of Paragraph 3(e) above, relating to the use of Proceeds. Any excess portion of any Award shall applied to partial prepayment of the Debt, without prepayment premium or penalty and shall not extend or postpone the due dates of monthly payments.

(c) TRUSTOR HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ALL RIGHTS OF A PROPERTY OWNER UNDER SECTION 1265.225(A) OF THE CALIFORNIA CODE OF CIVIL PROCEDURE OR ANY SUCCESSOR STATUTE PROVIDING FOR THE ALLOCATION OF CONDEMNATION PROCEEDS BETWEEN A PROPERTY OWNER AND A LIEN HOLDER.

10.  **Leases and Rents.** Trustor agrees that Beneficiary has the right to enter the Trust Property for the purpose of enforcing its interest in the Leases and the Rents. Nevertheless, subject to the terms of this Paragraph, Beneficiary grants Trustor a limited license to collect the Rents. Trustor shall hold the Rents, or that portion thereof sufficient to discharge all current sums due and unpaid by Trustor under the terms of the Note, whichever is less, in trust for use in the payment of the Debt.

Upon the occurrence of an Event of Default, Trustor's limited license to collect Rents shall automatically terminate, and any rents previously collected and in Trustor's possession shall thereafter be held in trust for payment of the Debt. Beneficiary may enter upon the Trust Property, collect and retain the Rents and apply the Rents toward payment of the Debt in such priority and proportions as Beneficiary in its discretion shall deem proper. All Major Tenant Leases (as defined below) entered into subsequent to the date hereof shall be approved, in writing, by Beneficiary. Upon request, Trustor shall furnish Beneficiary with executed copies of all Leases. In addition, all renewals of Leases and all proposed Leases shall provide for rental rates comparable to existing local market rates (taking into account reasonable free-rent periods or other promotional discounts consistent with local market conditions) and shall be arm's length transactions. All Leases shall provide that they are subordinate to this Deed of Trust, and that the lessee attorns to Beneficiary. Trustor shall not, without the consent of Beneficiary, cancel any Major Tenant Lease or accept prepayments of installments of Rent under a Major Tenant Lease for a period of more than one (1) month in advance or further assign the whole or any part of the Leases or the Rents. Trustor shall perform each provision of every Lease. All security and other deposits received by Trustor under any Lease shall be maintained in a separate account at a bank, and shall not be commingled with Trustor's other funds. If an Event of Default occurs, Beneficiary, at its option, may require Trustor to pay monthly in advance to Beneficiary, or any receiver appointed to collect the Rents, the fair rental value for the portion of the Trust Property possessed by Trustor and may require Trustor to surrender possession of the Trust Property to Beneficiary or to such receiver and, in default thereof, Trustor may be evicted by summary proceedings or otherwise. For purposes of this Paragraph, a "Major Tenant Lease" shall mean any Lease under which the tenant occupies at least 5,000 square feet of the Premises, or which is for a term of at least 10 years, or which otherwise represents at least 25% of the sum total of the Rent under all Leases of the Trust Property.

11.  **Preservation and Maintenance of Trust Property.** Trustor (i) shall keep the Improvements now or hereafter erected on the Premises in safe and good repair and condition, ordinary depreciation excepted; (ii) shall, upon damage or destruction of the Trust Property or any part thereof by fire or other casualty, restore, repair, replace or rebuild the Trust Property that is damaged or destroyed to the condition it was in immediately prior to such damage or destruction, whether or not any insurance proceeds are available or sufficient for such purpose; provided, however, that if Beneficiary shall apply all the insurance proceeds or any portion thereof to payment of the Debt, Trustor shall have the option, in lieu of completing such repair, replacement, rebuilding or restoration, to pay in full the Note and the entire Debt without payment of a premium or penalty; (iii) shall constantly maintain the parking and landscaped areas of the Trust Property; (iv) shall not commit waste or permit impairment or deterioration of the Trust Property; (v) shall not construct additions to existing buildings or additional buildings on the Premises without the prior written consent of the Beneficiary, which consent shall not be unreasonably withheld or delayed; (vi) shall not remove from the Premises any of the fixtures and personal property included in

COMMERCIAL DEED OF TRUST
Version 2/15/04 - Copyright, Doss & Page, Lawyers

5

the Trust Property unless the same is immediately replaced with property of at least equal value and utility, and this Deed of Trust becomes a valid first lien on such property, and (vii) shall maintain the roofs of the Improvements in safe, sound and good repair and condition.

12.  **Transfer or Encumbrances of the Trust Property.**  Trustor acknowledges that Beneficiary has examined both the creditworthiness of Trustor and Trustor's experience in owning and operating properties such as the Trust Property in determining whether or not to make the Loan, that Beneficiary has relied on Trustor's creditworthiness and experience in deciding to make the Loan, and that Beneficiary will continue to rely on Trustor's ownership of the Trust Property as a means of maintaining the value of the Trust Property as security for repayment of the Debt.  Trustor acknowledges that Beneficiary has a valid interest in maintaining the value of the Trust Property so as to ensure that, if Trustor defaults in the repayment of the Debt, Beneficiary can recover the Debt by a sale of the Trust Property.  If Trustor shall, without the prior written consent of Beneficiary, further encumber the Trust Property with any lien imposed in connection with any other financing, or sell, transfer or convey any part of the Trust Property or the right to manage or control the operation of any part of the Trust Property, the entire Debt shall become due, at the option of Beneficiary.  A sale, transfer or conveyance within the meaning of this Paragraph shall be deemed to include (i) an installment sales agreement in which Trustor agrees to sell any part of the Trust Property for a price to be paid in installments; (ii) an agreement by Trustor leasing all or a substantial part of the Trust Property, or a sale, pledge, assignment or other transfer of, or the grant of a security interest in, Trustor's right, title and interest in any Leases or any Rents; (iii) if Trustor is a corporation or a limited partnership with a corporate general partner, the transfer of stock of the Trustor or its corporate general partner to parties who do not now hold a controlling interest; (iv) if Trustor is a general or limited partnership, joint venture, or other form of partnership (a "Partnership"), a transfer of any general partnership interest or the admission of any new general partner; and (v) if Trustor is a limited liability company or a limited partnership with a limited liability company as general partner, the transfer of membership interests in the Trustor or its limited liability company general partner (or the stock or membership interests in any corporation or limited liability company controlling Trustor or its limited liability company general partner) or the creation or issuance of new memberships in Trustor or its limited liability company general partner to parties who do not now own a controlling interest. Beneficiary reserves the right to condition its consent upon a modification of the terms of this Deed of Trust and the Note and on assumption of this Deed of Trust as so modified, by the proposed transferee, payment of a transfer or assumption fee, or such other conditions as Beneficiary shall determine in its sole discretion to be in the interest of Beneficiary.  Beneficiary shall not be required to demonstrate any actual impairment of its security or any increased risk of default in order to declare the Debt immediately due and payable upon Trustor's sale, transfer, conveyance or further encumbrance of the Trust Property without Beneficiary's consent.  This provision shall apply to every sale, transfer, conveyance, or further encumbrance of the Trust Property regardless of whether voluntary or not or whether or not Beneficiary has consented to any previous sale, transfer, conveyance, or further encumbrance of the Trust Property regardless of whether voluntary or not or whether or not Beneficiary has consented to any previous sale, transfer, conveyance, or further encumbrance of the Trust Property.

13.  **Estoppel Certificates.**  After request by Beneficiary, Trustor, within ten (10) days and at its expense, will furnish the Beneficiary with a statement, duly certified, confirming or otherwise setting forth the original principal amount of the Note, the unpaid principal amount of the Note, the rate of interest on the unpaid principal amount of the Note, the dates installments of interest (or any principal) were last paid, the offsets or defenses to the payment of the Debt, if any, and that the Note and this Deed of Trust are valid, legal and binding obligations and have not been modified or, if modified, giving particulars on such modification.

14.  **Notices.**  Any notice, demand, statement, request, or consent made under this Deed of Trust shall be in writing and shall be deemed given when hand delivered, or within three (3) days after the date sent by certified mail, return receipt requested, or the next business day after the date sent by nationally recognized overnight mail or courier service to the address, as set forth above, of the party to whom such notice is to be given, or to such other address as Trustor, Trustee or Beneficiary, as the case may be, shall in like manner designate in writing.

Trustor hereby requests that, unless otherwise prescribed by law, a copy of any notice of default or notice of sale pursuant to the nonjudicial foreclosure of this Deed of Trust be mailed to Trustor at the mailing address set forth in the preamble above.

15.  **Sale of Trust Property.**  If this Deed of Trust is foreclosed, the Trust Property, or any interest therein, may at the discretion of Beneficiary be sold in one or more parcels or in several interests or portions and in any order or manner as may be permitted by applicable law.

16.  **Right of Entry.**  Beneficiary and its agents shall have the right to enter and inspect the Trust Property at all reasonable times upon notice to Trustor.

17.  **Books and Records.**  Trustor shall keep adequate books and records of account and furnish Beneficiary with financial statements prepared by a certified public accountant reasonably acceptable to Beneficiary, and other information concerning the affairs of Trustor as Beneficiary may reasonably request, in form and detail reasonably satisfactory to Beneficiary, including, annual statements of income and expense related to the operation of the Trust Property (including a current rent roll, gross rental income, other income, real estate taxes, insurance, operating expenses and depreciation), a copy of Trustor's federal income tax return (including all supporting schedules) within 90 days after the end of each fiscal year, and from time to time, interim financial statements and other information as reasonably requested by Beneficiary.  All such financial statements, and other information shall be certified to be true and accurate by an individual responsible for the financial affairs of Trustor, in such individual's individual capacity.   In the event that such financial statements and other information are not furnished to Beneficiary by Trustor, or, if furnished, are not in a form reasonably acceptable to Beneficiary,

Non-Order Search                          Page 27 of 82          Requested By: Gary Ricks  , Printed: 10/26/2018 12:04 PM
Doc: 2015-1361333 TDR 11-06-2015

Beneficiary may, in addition to any other remedies which Beneficiary has under this Deed of Trust, the Note, or any of the Other Security Documents, audit the books and records of Trustor, and any expense of the audit shall be added to the Debt  Immediately upon the appointment of a receiver of the Trust Property by a court of competent jurisdiction, Trustor shall deliver all books and records or other documents required to be maintained under the terms of this section to such receiver.

18.    Performance of Other Agreements.  Trustor shall observe and perform each and every term to be observed or performed by Trustor pursuant to the terms of any agreement or recorded instrument affecting or pertaining to the Trust Property.

19.    Events of Default.  Any one or more of the following events shall be an event of default (an "Event of Default") under this Deed of Trust:

(a)  If any payment under the Note is not paid within any grace period in the Note, or if any other monetary obligation of Trustor to Beneficiary the Note, this Deed of Trust or the Other Security Documents is not paid within the due date and any specified grace period; or

(b)  If any of the Impositions is not paid before it becomes delinquent; or

(c)  If the Policies are not kept in good standing; or

(d)  If Trustor does not comply with the provisions of Paragraph 12 of this Deed of Trust; or

(e)  If any representation or warranty of Trustor, or of any person guaranteeing or otherwise liable for payment of the Debt (a "Guarantor") or in any such Guaranty, or in any certificate, report, financial statement or other instrument furnished in connection with the making of the Note, this Deed of Trust, or any such Guaranty, shall be false or misleading in any material respect and the inaccuracy is not cured to the reasonable satisfaction of Beneficiary, within fifteen (15) days after written notice from Beneficiary to Trustor provided, however, that if the default is of a kind that it cannot be cured within 15 days, then Trustor shall not be in default if Trustor commences curing the default within a reasonable time and diligently completes the cure within a reasonable time, but not more than 60 days after the date of the original written notice; or

(f)  If Trustor or any Guarantor makes an assignment for the benefit of creditors; or

(g)  If a receiver, liquidator or trustee of Trustor or of any Guarantor shall be appointed or if Trustor or any Guarantor is adjudicated a bankrupt or insolvent, or if any petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law, or any similar federal or state law, is filed by or against Trustor or any Guarantor, or if any proceeding for the dissolution or liquidation of Trustor or of any Guarantor is instituted and, if such appointment, adjudication, petition or proceeding was involuntary, if it is not discharged, stayed or dismissed within thirty (30) days or if Trustor is generally not paying its debts as they become due; or

(h)  If Trustor defaults under any other mortgage, deed of trust or security agreement covering any part of the Trust Property whether it be superior or inferior to the lien of this Deed of Trust, and if such default is not cured within any applicable cure or grace period; or

(i)  If the Trust Property is subjected (i) to any lien which is superior to the lien of this Deed of Trust, other than a lien for local real estate taxes and assessments not yet delinquent and any Permitted Encumbrances, or (ii) to any mechanic's, materialmen's, construction, or other lien which is superior to the lien of this Deed of Trust and such lien remains undischarged for thirty (30) days.

If one or more of the Events of Default occurs, the Debt shall include interest on the Debt at the Default Rate as defined in the Note upon any unpaid portion of the Debt and the entire Debt shall become immediately due and payable at the option of the Beneficiary, without further notice or demand; and, in addition, whether or not Beneficiary exercises its option, it may exercise all rights and remedies available to it under the law, including the following:

(j)  Beneficiary may enter upon, take immediate possession of, manage, and operate the Trust Property or any part thereof, make repairs and alterations and do any acts that Beneficiary deems reasonable to protect the security of the Deed of Trust, including remedies contained in any of the Other Security Documents; and either with or without taking possession, in its own name, collect the rents, issues and profits, including those past due and unpaid, and apply the rents, less costs and expenses of operation and collection, including reasonable attorneys' fees and the Beneficiary's costs, upon the Debt and in such order as Beneficiary determines.  If Beneficiary requests, Trustor shall assemble and make available to Beneficiary at the Premises any of the Trust Property that has been removed.  None of the foregoing actions shall cure or waive any Event of Default and Beneficiary shall be entitled to exercise every remedy allowed in this Deed of Trust or by law after an Event of Default

(k)  Beneficiary shall be entitled to the immediate ex parte appointment of a receiver, without notice, to take possession of and protect the Trust Property and to operate it and collect the rents, issues and profits from it.

(l)  Beneficiary may bring suc to foreclose this Deed of Trust or to enforce any of its provisions.

(m)  Trustee may, and upon Beneficiary's request, elect to sell the Trust Property or its parts as follows:

(i)  Trustee may proceed as if all of the Trust Property were real property in accordance with subparagraph (iv) below, or Trustee may elect to treat any of the Trust Property which consists of a right in action or which is property that can be severed from the Premises without causing structural damage thereto as if the same were personal property and dispose of the same in accordance with subparagraph (iii) below, separate from the sale of real property, the remainder of the Trust Property being treated as real property.

(ii)  Trustee may cause any such sale or other disposition to be conducted immediately following the expiration of any grace period, if any, provided in this Deed of Trust or the Note, or Trustee may delay any such sale or other disposition as Trustee deems to be in its best interest.  If Trustee conducts more than

COMMERCIAL DEED OF TRUST                                    7
Version 2/15/04 - Copyright, Doss & Page, Lawyers

one sale, Trustee may, at its option, cause the sales to be conducted simultaneously, or successively on the same day, or at different days or times and in such order as Trustee may deem to be in its best interest.

(iii) If Trustee elects to dispose of personal property as permitted in subparagraph (i) above, it or Beneficiary may dispose of any part thereof in any manner permitted by Article 9 of the California Commercial Code. Both Trustor and Beneficiary shall be eligible to purchase any part of such property at any sale. Any such disposition may be either public or private, as Trustee or Beneficiary may so elect, subject to the provisions of the California Commercial Code. Trustee or Beneficiary shall give Trustor at least ten (10) days' prior written notice of the time and place of any public sale or other disposition of such property, and if such notice is sent to Trustor at the address above, it shall constitute reasonable notice to Trustor.

(iv) If Trustee elects to sell the Trust Property which is real property or which it has elected to treat as real property, upon such election, Trustee shall give such Notice of Default and election to sell as may then be required by law. Thereafter, upon the expiration of such time and the giving of such Notice of Sale as may then be required by law, Trustee, at the time and place specified by the Notice of Sale, shall sell such Trust Property, or any portion thereof specified by Trustee, at public auction to the highest bidder for cash in lawful money of the United States. Trustee may, and upon request of Beneficiary shall, from time to time, postpone the sale by public announcement at the time and place noticed for the sale. If the Trust Property consists of several lots or parcels, Trustee may designate the order in which such lots or parcels are offered for sale or sold. Any person, including Trustor, Trustee, or Beneficiary may purchase at the sale. At the sale the Trustee shall execute and deliver to the purchaser, a deed conveying the property so sold, but without any covenant or warranty, express or implied, after which the purchaser shall be entitled to immediate possession.

(v) This instrument shall be effective as a mortgage as well as a deed of trust and if an Event of Default occurs, may be foreclosed as to any of Trust Property in any manner permitted by the laws of the State, and any foreclosure suit may be brought by the Trustee or by the Beneficiary. In a foreclosure is commenced by the then Trustee, the Beneficiary may at any time before the sale of the Trust Property direct the Trustee to abandon the sale, and may then institute or complete a suit for the collection of the Note and the other Debt, and for judicial foreclosure of this Deed of Trust. It is agreed that if the Beneficiary institute a suit for the collection of the Note or any other Debt and for the judicial foreclosure of this Deed of Trust, the Beneficiary may at any time before the entry of a final judgment in said suit dismiss it, and require the Trustee to sell the Trust Property under the provisions of this Deed of Trust.

(vi) The recital of facts, such as default, the giving of Notice of Default, and Notice of Sale, terms of sale, purchaser, payment of purchase money, and any other fact affecting the regularity or validity of such sale or disposition in a trustee's deed or other conveyance, shall be conclusive proof of the truth of those facts and conclusive against all persons.

(vii) The proceeds of any sale or disposition, together with any other sums which then may be held by Trustee or Beneficiary, shall be applied as follows: FIRST, to the expenses of such sale or disposition together with Trustee's fees and reasonable attorneys' fees and expenses, Beneficiary's costs and the actual cost of publishing, recording, mailing and posting notice; SECOND, to the cost of any search or other policy of title procured in connection with the sale, if applicable, and recordation and transfer taxes and other charges, if any, on any release or deed of reconveyance; THIRD, to the payment of all amounts secured by this Deed of Trust, the Note and the Other Security Documents, and all other sums due Beneficiary from Trustor; FOURTH, to all other sums secured hereby; and the remainder, if any, to the person or persons legally entitled thereto in the order of their priority.

Without limiting the generality of the foregoing, Trustee is expressly authorized to conduct a "unified sale" under Section 9501(4) of the California Commercial Code.

Any payment of the principal amount of Debt subsequent to the entire amount of the Debt becoming immediately due and payable under the terms of this Paragraph shall be deemed a prepayment of such principal amount subject to liquidated damages as specified under the terms of the Note.

The Beneficiary shall have the right to become the purchaser at any sale held by any Trustee or by any receiver or public officer, and Beneficiary shall have the right to credit upon the amount of the bid made, to the extent necessary to satisfy such bid, the Debt owing to Beneficiary, or if Beneficiary holds less than all of such indebtedness the pro rata part owing to Beneficiary, accounting to all other beneficiaries or noteholders not joining in such bid in cash for the portion of such bid or bids apportionable to such nonbidding beneficiary or noteholder.

The Trustee may be removed at any time with or without cause by an instrument in writing executed by the Beneficiary, or if there is more than one Beneficiary, by a writing executed by a majority in ownership of the Beneficiaries. In case of the death, resignation, removal or disqualification of the Trustee or if for any reason the Beneficiary shall deem it desirable to appoint a substitute or successor trustee to act instead of the herein named Trustee or any substitute or successor trustee, then the Beneficiary shall have the right and hereby is authorized and empowered to appoint a successor trustee, or a substitute trustee, without other formality than appointment and designation in writing executed by the Beneficiary and the authority hereby conferred shall extend to the appointment of other successor and substitute trustees successively until the Debt finally has been paid in full or until the Trust Property is sold. All references herein to the Trustee shall refer to the Trustee from time to time acting hereunder.

20.    **Right to Cure Defaults.**  If an Event of Default occurs, Beneficiary may, but is not required to, and without notice to or demand on Trustor and without releasing Trustor from any obligation, make or do the same in such manner and to such extent as Beneficiary may deem necessary or advisable to protect the security hereof. Beneficiary is authorized to enter upon the Trust Property for such purposes, or appear in, defend, or bring any action or proceeding to protect its interest in the Trust Property or to foreclose this Deed of Trust or collect the Debt, and the cost and expense thereof (including attorneys' fees and expenses) with interest as provided in this

Non-Order Search
Doc: 2015-1361333 TDR 11-06-2015

Requested By: Gary Ricks  , Printed: 10/26/2018 12:04 PM

Paragraph, shall be due upon demand from Beneficiary to Trustor. All such costs and expenses incurred by Beneficiary in remedying such Event of Default or in appearing in, defending, or bringing any such action or proceeding shall be paid at the Default Rate as stated and defined in the Note and secured by this Deed of Trust.

21.    Non-Waiver. Beneficiary's failure to insist upon strict performance of a term of this Deed of Trust shall not be a waiver of any term of this Deed of Trust. Trustor shall not be relieved of its obligations because (i) Beneficiary fails to comply with any request of Trustor or any Guarantor to take any action to foreclose this Deed of Trust or otherwise enforce any of its provisions or of the Note or Other Security Documents, (ii) any part of the Trust Property is released or substituted, or (iii) Trustor or Beneficiary extend the time of payment or otherwise modify or supplement the terms of the Note, this Deed of Trust or the Other Security Documents. Beneficiary may resort to any other security held by Beneficiary in such order and manner as Beneficiary, in its discretion, may elect. The rights of Beneficiary under this Deed of Trust shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Beneficiary shall be construed as an election to proceed under any one provision to the exclusion of other provisions.

22.    Liability. If Trustor consists of more than one person as individuals or as partners, the obligations and liabilities of each such person hereunder shall be joint and several.

23.    Security Agreement. This Deed of Trust is both a real property Deed of Trust and a "security agreement" within the meaning of the California Commercial Code. The Trust Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Trustor in the Trust Property. TRUSTOR HEREBY GRANTS TO BENEFICIARY, AS SECURITY FOR THE DEBT, A SECURITY INTEREST IN THE TRUST PROPERTY TO THE FULL EXTENT THAT THE TRUST PROPERTY MAY BE SUBJECT TO THE CALIFORNIA COMMERCIAL CODE OR THE UNIFORM COMMERCIAL CODE OF ANY OTHER STATE OR STATES WHERE THE TRUST PROPERTY IS SITUATED (said portion of the Trust Property so subject to a Commercial Code being called in this Paragraph the "Collateral"). If an Event of Default occurs, Beneficiary shall have and may exercise immediately and without demand, all rights and remedies granted to a secured party upon default under the California Commercial Code, including, the right to take possession of the Collateral, and to take such other measures as Beneficiary may deem reasonably necessary or advisable for the care, protection and preservation of the Collateral. Trustor shall pay to Beneficiary on demand any expenses, including attorneys' fees and expenses, incurred by Beneficiary in protecting its interest in the Collateral and in enforcing its rights to the Collateral. Any notice of sale, disposition or other intended action by Beneficiary as to the Collateral sent to Trustor at least ten (10) days prior to such action, shall constitute reasonable notice to Trustor. The proceeds of any disposition of the Collateral may be applied by Beneficiary to the payment of the Debt in the priority and proportions as Beneficiary in its discretion shall deem proper.

24.    Fixture Filing. From the date of its recording, this Deed of Trust shall be effective as a financing statement filed as a fixture filing with respect to all goods constituting part of the Trust Property which are or become fixtures related to the real estate described in this Deed of Trust. For this purpose, the following information is set forth:

(a)    Name and address of Debtor:
              Oligarch Capital, LLC
              10153 1/2 Riverside Dr. #189
              Toluca Lake, CA 91602

(b)    Name and Address of Secured Party:
              NPI Debt Fund I, LP
              567 San Nicolas Drive Suite 280
              Newport Beach, CA 92660

(c)    This document covers goods that are or are to become fixtures.
(d)    Description of Real Estate: See Exhibit "A".
(e)    Owner of Record of Real Estate: Debtor.
(f)    This Financing Statement covers Proceeds.
(g)    Products of the Collateral are also covered.

25.    Authority. Trustor has full power, authority and legal right to execute this Deed of Trust, and to create the security interest in the Trust Property contained in this Deed of Trust and to keep and observe all of the terms of this Deed of Trust.

26.    Actions and Proceedings. Trustee and Beneficiary have the right to appear in and defend any action or proceeding affecting the Trust Property and to bring any action or proceeding, in the name of Trustor, which Trustee and Beneficiary, in their discretion, decide should be brought to protect their interests in the Trust Property. Trustee and Beneficiary shall, at their option, be subrogated to the lien of any mortgage, deed of trust, or other security instrument discharged in whole or in part by the Debt, and any such subrogation rights shall constitute additional security for the payment of the Debt.

27.    Inapplicable Provisions. Whenever possible, each provision of this Deed of Trust shall be interpreted as effective and valid under applicable law, but if any provision of this Deed of Trust is prohibited or invalid, it shall be ineffective to the extent necessary to make the remaining provisions valid.

28.    Duplicate Originals. This Deed of Trust may be executed in any number of duplicate originals and each such duplicate original shall be deemed to be one and the same instrument.

29.   Certain Definitions. Words used in this Deed of Trust in singular or plural form shall include the other, and the word "Trustor" shall mean "each Trustor or any subsequent owner or owners of the Trust Property or any part thereof or any interest therein," the word "Trustee" shall mean "Trustee and any successor trustee appointed by Beneficiary according to law," the word "Beneficiary" shall mean "Beneficiary or any subsequent holder of the Note or any part thereof or any of the Debt," and the word "Note" shall mean "the Note or any other evidence of indebtedness secured by this Deed of Trust," the word "person" shall include an individual, corporation, partnership, trust, unincorporated association, government, governmental authority, or other entity, the words "Trust Property" shall include any portion of the Trust Property or interest in it, and the word "Debt" shall mean the principal balance of the Note with interest as provided in the Note and this Deed of Trust and all other indebtedness, obligations, and liabilities due pursuant to the Note, this Deed of Trust, or the Other Security Documents; whenever the context may require, any pronouns used shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

30.   No Oral Change. This Deed of Trust may not be modified, amended, changed, discharged, waived or terminated orally, but only by a writing signed by the person against whom the enforcement of the modification, amendment, change, waiver, discharge or termination is sought.

31.   WAIVERS. TO THE EXTENT PERMITTED BY LAW, TRUSTOR HEREBY WAIVES TRIAL BY JURY IN ANY ACTION OR PROCEEDING BROUGHT BY EITHER PARTY AGAINST THE OTHER ARISING OUT OF OR CONNECTED WITH THIS DEED OF TRUST OR THE DEBT.

32.   Further Acts, Etc. Trustor will, at its cost, do, execute, acknowledge and deliver all other acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfers and assurances as Beneficiary shall require for to facilitate the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust and, on demand, will execute and deliver any financing statement, chattel mortgages or comparable security instruments, to evidence more effectively the lien upon the Trust Property.

33.   Headings, Etc. The headings and captions of various paragraphs of this Deed of Trust are for convenience of reference only and are not to be considered as affecting the contents of the paragraphs.

34.   Filings of Deed of Trust, Etc. Trustor shall pay all filing, registration or recording fees and all attorneys' fees, commissions, and expenses for the preparation, execution and acknowledgment of the Note, this Deed of Trust, and the Other Security Documents.

35.   Usury Laws. No terms of this Deed of Trust, the Note, or any of the Other Security Documents, shall be construed to create a contract for the use, forbearance or detention of money requiring payment of interest at a rate in excess of the Maximum Rate (as such term is defined in the Note). The Trustor shall never be required to pay interest at a rate in excess of the Maximum Rat. The provisions of this Paragraph shall control over all other provisions of any other instrument executed in connection herewith or executed to secure the Debt that is in apparent conflict with this Paragraph. If Beneficiary collects monies that are deemed to be interest that would increase the effective interest rate on the Note to a rate in excess of the Maximum Rate, all such excessive sums shall be applied to the reduction of the unpaid principal balance and not to the payment of interest, and if a surplus remains after full payment of principal and lawful interest, the surplus shall be refunded to Trustor in cash and Trustor hereby agrees to accept such refund.

36.   INDEMNIFICATION. TRUSTOR SHALL PROTECT, INDEMNIFY AND SAVE HARMLESS TRUSTEE AND BENEFICIARY FROM ALL LIABILITIES, OBLIGATIONS, CLAIMS, DAMAGES, PENALTIES, CAUSES OF ACTION, COSTS AND EXPENSES (INCLUDING WITHOUT LIMITATION REASONABLE ATTORNEYS' FEES AND EXPENSES) IMPOSED UPON OR INCURRED BY OR ASSERTED AGAINST TRUSTEE OR BENEFICIARY BECAUSE OF (A) FRAUD OR MATERIAL MISREPRESENTATION BY OR ON BEHALF OF THE TRUSTOR; (B) ANY FAILURE ON THE PART OF TRUSTOR TO PERFORM OR COMPLY WITH ANY OF THE TERMS OF THIS DEED OF TRUST OR THE OTHER SECURITY DOCUMENTS; (C) OWNERSHIP OF THE TRUST PROPERTY OR ANY INTEREST IN IT OR THE RECEIPT OF ANY RENTS; (D) ANY ACCIDENT, INJURY TO OR DEATH OF PERSONS OR LOSS OF OR DAMAGE TO PROPERTY OCCURRING IN, ON OR ABOUT THE TRUST PROPERTY; (E) ANY USE, NONUSE OR CONDITION IN, ON OR ABOUT THE TRUST PROPERTY OR ANY PART THEREOF; OR (F) PERFORMANCE OF ANY LABOR OR SERVICES OR THE FURNISHING OF ANY MATERIALS OR OTHER PROPERTY TO THE TRUST PROPERTY, WHETHER OR NOT CAUSED IN WHOLE OR IN PART BY THE NEGLIGENT ACTS OR OMISSIONS OF THE BENEFICIARY OR INDIVIDUALS OR ENTITIES ACTING AS THE AGENTS OR EMPLOYEES OF BENEFICIARY. HOWEVER, SUCH INDEMNITY SHALL NOT APPLY TO MATTERS CAUSED BY OR ARISING OUT OF THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF TRUSTEE OR BENEFICIARY, OR ANY OF ITS AGENTS, OR AS TO LIABILITIES, OBLIGATIONS, CLAIMS, DAMAGES, PENALTIES, CAUSES OF ACTION, COSTS AND EXPENSES BASED SOLELY ON FACTS OR CIRCUMSTANCES OCCURRING ONLY SUBSEQUENT TO SUCH TIME, IF ANY, THAT BENEFICIARY BECOMES THE OWNER OF THE TRUST PROPERTY BY WAY OF FORECLOSURE OF THE LIEN OF THE DEED OF TRUST, DEED IN LIEU OF SUCH FORECLOSURE, OR OTHERWISE. ANY AMOUNT PAYABLE TO TRUSTEE OR BENEFICIARY BECAUSE OF THE APPLICATION OF THIS PARAGRAPH SHALL BECOME IMMEDI-ATELY DUE AND PAYABLE UPON DEMAND BY BENEFICIARY, AND SHALL BEAR INTEREST AT THE DEFAULT RATE, AS STATED AND DEFINED IN THE NOTE, FROM THE DATE OF SUCH DEMAND. THE OBLIGATIONS OF TRUSTOR UNDER THIS PARAGRAPH SHALL SURVIVE ANY TERMINATION OR SATISFACTION OF THIS DEED OF TRUST.

37.   Reconveyance of Trust Property. Upon payment of all sums secured by this Deed of Trust, the Trustee shall reconvey all of the Trust Property to the person or persons entitled to such reconveyance.

38.   Governing Law. This Deed of Trust shall be governed and construed under California law.

COMMERCIAL DEED OF TRUST                                                           10
Version 2/15/04 - Copyright, Doss & Page, Lawyers

39.    Duties and Obligations of Trustee. Trustor agrees that: (a) the duties and obligations of Trustee shall be determined solely by the express provisions of this Deed of Trust and the Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth in this Deed of Trust, and no implied covenants or obligations shall be imposed upon Trustee; (b) no provision of this Deed of Trust shall require Trustee to expend or risk its own funds, or otherwise incur any financial obligation in the performance of any of its duties, or in the exercise of any of its rights or powers, if it shall have grounds for believing that the repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured of it; (c) Trustee may consult with counsel of its own choosing and the advice of such counsel shall be full and complete authorization and protection in the respect of any actions taken by it in good faith and in reliance upon the advice; (d) Trustee shall not be liable for any action taken by it in good faith and reasonably believed by it to be authorized or within the direction or rights or powers conferred upon it by this Deed of Trust.

Trustee shall have the right, at its sole option and from time to time, to substitute one or more trustees for the Trustee named above, without notice to Trustor. In the event there shall be more than one trustee, either trustee may act hereunder.

40.    Request for Notice of Default and Notice of Sale. Trustor hereby requests that a copy of any notice of default and of any notice of sale pursuant to the nonjudicial foreclosure of this Deed of Trust be mailed to Trustor at the mailing address set forth in the preamble above.

41.    ENVIRONMENTAL INDEMNIFICATION. TRUSTOR HEREBY AGREES, AT ITS SOLE COST AND EXPENSE, TO UNCONDITIONALLY INDEMNIFY, DEFEND, AND HOLD TRUSTEE AND BENEFICIARY AND ITS DIRECTORS, OFFICERS, EMPLOYEES AND AGENTS HARMLESS FROM AND AGAINST ANY LOSS, LIABILITY, DAMAGE (WHETHER DIRECT OR CONSEQUENTIAL), EXPENSES, CLAIMS, PENALTIES, FINES, INJUNCTIONS, SUITS, PROCEEDINGS, DISBURSEMENTS OR EXPENSES (INCLUDING, WITHOUT LIMITATION, ATTORNEYS' AND EXPERTS' FEES AND DISBURSEMENTS AND COURT COSTS) (COLLECTIVELY, THE "LIABILITIES") (A) AS A RESULT OF THE INCORRECTNESS OF ANY REPRESENTATION OR WARRANTY OF TRUSTOR OR ANY OTHER PARTY CONTAINED IN ANY ENVIRONMENTAL CERTIFICATE AND INDEMNITY AGREEMENT DATED OF THE SAME DATE, GIVEN BY TRUSTOR (AND, PERHAPS OTHER INDIVIDUALS OR ENTITIES) TO BENEFICIARY (THE "ENVIRONMENTAL INDEMNITY"); (B) ARISING UNDER ANY HAZARDOUS SUBSTANCE LAW, OR (C) ANY OTHER LIABILITIES, IF ANY, WHICH MAY BE INCURRED BY OR ASSERTED AGAINST TRUSTEE OR BENEFICIARY DIRECTLY OR INDIRECTLY RESULTING FROM THE PRESENCE OF A HAZARDOUS SUBSTANCE ON THE TRUST PROPERTY, WHETHER OR NOT CAUSED IN WHOLE OR IN PART BY THE NEGLIGENT ACTS OR OMISSIONS OF THE TRUSTEE AND BENEFICIARY OR INDIVIDUALS OR ENTITIES ACTING AS THE AGENTS OR EMPLOYEES OF THE TRUSTEE OR BENEFICIARY; PROVIDED, HOWEVER, THAT SUCH INDEMNITY SHALL NOT APPLY TO MATTERS CAUSED BY OR ARISING OUT OF THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF TRUSTEE OR BENEFICIARY, OR ANY OF ITS AGENTS, OR WITH RESPECT TO LIABILITIES, OBLIGATIONS, CLAIMS, DAMAGES, PENALTIES, CAUSES OF ACTION, COSTS AND EXPENSES BASED SOLELY ON FACTS OR CIRCUMSTANCES OCCURRING ONLY SUBSEQUENT TO THE TIME, IF ANY, THAT BENEFICIARY BECOMES THE OWNER OF THE TRUST PROPERTY BY WAY OF FORECLOSURE OF THE LIEN OF THIS DEED OF TRUST, DEED IN LIEU OF SUCH FORECLOSURE, OR OTHERWISE. FOR PURPOSES OF THIS AGREEMENT, THE FOLLOWING TERMS SHALL MEAN AS FOLLOWS: (A) "ENVIRONMENT" MEANS ANY SURFACE OR SUBSURFACE WATER, WATER VAPOR, SURFACE OR SUBSURFACE LAND, AIR, FISH, WILDLIFE, MICROORGANISMS AND ALL OTHER NATURAL RESOURCES; (B) "GOVERNMENTAL AUTHORITY" MEANS THE FEDERAL GOVERNMENT, OR ANY STATE OR OTHER POLITICAL SUBDIVISION THEREOF, OR ANY AGENCY, COURT OR BODY OF THE FEDERAL GOVERNMENT, ANY STATE OR OTHER POLITICAL SUBDIVISION THEREOF, EXERCISING EXECUTIVE, LEGISLATIVE, JUDICIAL, REGULATORY OR ADMINISTRATIVE FUNCTIONS; (C) "HAZARDOUS SUBSTANCE" MEANS AND INCLUDES ASBESTOS OR ANY SUBSTANCE CONTAINING ASBESTOS, POLYCHLORINATED BIPHENYLS, ANY EXPLOSIVES, RADIOACTIVE MATERIALS, CHEMICALS KNOWN OR SUSPECTED TO CAUSE CANCER OR REPRODUCTIVE TOXICITY, POLLUTANTS, EFFLUENTS, CONTAMINANTS, EMISSIONS, INFECTIOUS WASTES, ANY PETROLEUM OR PETROLEUM-DERIVED WASTE OR PRODUCT OR RELATED MATERIALS AND ANY ITEMS DEFINED AS HAZARDOUS, SPECIAL OR TOXIC MATERIALS, SUBSTANCES OR WASTE UNDER ANY HAZARDOUS SUBSTANCE LAW, OR ANY MATERIAL WHICH SHALL BE REMOVED FROM THE TRUST PROPERTY PURSUANT TO ANY ADMINISTRATIVE ORDER OR ENFORCEMENT PROCEEDING OR IN ORDER TO PLACE THE TRUST PROPERTY IN A CONDITION THAT IS SUITABLE FOR ORDINARY USE, (D) "HAZARDOUS SUBSTANCE LAWS" COLLECTIVELY MEANS AND INCLUDES ANY PRESENT AND FUTURE LOCAL, STATE, FEDERAL OR INTERNATIONAL LAW OR TREATY RELATING TO PUBLIC HEALTH, SAFETY OR THE ENVIRONMENT INCLUDING WITHOUT LIMITATION, THE RESOURCE CONSERVATION AND RECOVERY ACT, AS AMENDED ("RCRA"), 42 U.S.C. § 6901 ET SEQ., THE COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION, AND LIABILITY ACT ("CERCLA"), 42 U.S.C. § 9601 ET SEQ., AS AMENDED BY THE SUPERFUND AMENDMENTS AND REAUTHORIZATION ACT OF 1986 ("SARA"), THE HAZARDOUS MATERIALS TRANSPORTATION ACT, 49 U.S.C. § 1801 ET SEQ., THE CLEAN WATER ACT, 33 U.S.C. § 1251 ET SEQ., THE CLEAN AIR ACT, AS AMENDED 42 U.S.C. § 7401 ET SEQ., THE TOXIC SUBSTANCES CONTROL ACT, 15 U.S.C. § 2601 ET SEQ., THE SAFE DRINKING WATER ACT, 42 U.S.C. § 300F ET SEQ., THE URANIUM MILL TAILINGS RADIATION CONTROL ACT, 42 U.S.C. § 7901 ET SEQ., THE OCCUPATIONAL SAFETY AND HEALTH ACT, 29 U.S.C. § 655 ET SEQ.,

COMMERCIAL DEED OF TRUST                                                11
Version 2/15/04 - Copyright, Doss & Page, Lawyers

THE FEDERAL INSECTICIDE, FUNGICIDE AND RODENTICIDE ACT, 7 U.S.C. § 136 ET SEQ., THE NATIONAL ENVIRONMENTAL POLICY ACT, 42 U.S.C. § 4321 ET SEQ., THE NOISE CONTROL ACT, 42 U.S.C. § 4901 ET SEQ., AND THE EMERGENCY PLANNING AND COMMUNITY RIGHT-TO-KNOW ACT, 42 U.S.C. § 11001 ET SEQ., AND THE AMENDMENTS, REGULATIONS, ORDERS, DECREES, PERMITS, LICENSES OR DEED RESTRICTIONS NOW OR LATER PROMULGATED UNDER SUCH LAW; AND (E) "**RELEASE**" MEANS ANY DISCHARGING, DISPOSING, EMITTING, LEAKING, PUMPING, POURING, EMPTYING, INJECTING, ESCAPING, LEACHING, DUMPING OR SPILLING INTO THE ENVIRONMENT (INCLUDING THE ABANDONMENT OR DISCARDING OF BARRELS, CONTAINERS AND OTHER CLOSED RECEPTACLES). The provisions of this Paragraph are sometimes referred to as the "**Environmental Indemnity Provisions**."

The indemnity in this Paragraph is intended to be operable under 42 U.S.C. 9607(e)(1), and any successor section thereof, and shall survive the foreclosure, release or reconveyance of this Deed of Trust, whether by payment of the Debt or any deed-in-lieu of foreclosure of the Trust Property. In addition, this Paragraph is intended to be cumulative of any rights of the Beneficiary under California Code of Civil Procedure Sections 564, 726.5 and 736 and under California Civil Code Section 2929.5. Trustor hereby waives any restrictions or limitations that such statutes may impose on Trustor's liability or Beneficiary's rights or remedies under this Paragraph.

Trustor agrees that: (a) this Paragraph is intended as Beneficiary's written request for information (and Trustor's response) concerning the environmental condition of the real property security as required by California Code of Civil Procedure Section 726.5; and (b) each provision in this Paragraph (together with any indemnity applicable to a breach of any such provision) with respect to the environmental condition of the Trust Property is intended by Trustor, Beneficiary and any Guarantor to be an "environmental provision" for purposes of California Code of Civil Procedure Section 736.

In the event that any portion of the Trust Property is determined to be "environmentally impaired" (as "environmentally impaired" is defined in California Code of Civil Procedure Section 726.5(e)(3)) or to be an "affected parcel" (as "affected parcel" is defined in California Code of Civil Procedure Section 726.5(e)(1)), then, without otherwise limiting or in any way affecting Beneficiary's or Trustee's rights and remedies under this Deed of Trust, Beneficiary may elect to exercise its right under California Code of Civil Procedure Section 726.5(a) to (i) waive its lien on such environmentally impaired or affected portion of the Trust Property, and (ii) exercise the rights and remedies of an unsecured creditor, including reduction of its claim against Trustor to judgment and any other rights and remedies permitted by law. For purposes of determining Beneficiary's right to proceed as an unsecured creditor under California Code of Civil Procedure Section 726.5(a), Trustor shall be deemed to have willfully permitted or acquiesced in a release or threatened release of hazardous materials, within the meaning of California Code of Civil Procedure Section 726.5(d)(1), if the release or threatened release of hazardous materials was knowingly or negligently caused or contributed to by any lessee, occupant or user of any portion of the Trust Property and Trustor knew or should have known of the activity by such lessee, occupant or user which caused or contributed to the release or threatened release.

THE NOTE, THIS DEED OF TRUST, ANY GUARANTY, ANY ENVIRONMENTAL INDEMNITY, AND THE OTHER SECURITY DOCUMENTS COLLECTIVELY REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

**IN WITNESS WHEREOF**, the undersigned has executed and delivered this Deed of Trust, effective as of the date first above written.

Trustor:      Oligarch Capital, LLC, a California Limited Liability Company

BY: _____

Christian Copelin
Member

A notary public or other officer completing this certificate
verifies only the identity of the individual who signed the
document to which this certificate is attached, and not the
truthfulness, accuracy, or validity of that document.

*Louisiana*

State of ~~California~~ )

County of *Jefferson* )

On *10/31/15* before me, *Stacy Saucier Ludlow, notary public* (here insert name and title of
officer), personally appeared *Christian Cope* who proved to me on the basis of satisfactory evidence to
be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is
true and correct.

WITNESS my hand and official seal.

Notary Public

Print Name: _____

My commission expires: *With life*

STACY SAUCIER LUDLOW
Notary Public, ID# 87490
St. Tammany Parish, Louisiana
Statewide Jurisdiction

COMMERCIAL DEED OF TRUST
Version 2/15/06 • Copyright, Doss & Page, Lawyers

13

16

### EXHIBIT "A"

### LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

THAT PORTION OF LOT 90 OF TRACT NO. 10619, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 162 PAGES 23 AND 24 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, LYING NORTHERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE WESTERLY LINE OF SAID LOT, DISTANT ALONG SAID WESTERLY LINE, 25 41 FEET SOUTHERLY FROM THE NORTHWESTERLY CORNER OF SAID LOT; THENCE EASTERLY IN A DIRECT LINE TO A POINT IN THE CURVED EASTERLY LINE OF SAID LOT, DISTANT ALONG SAID CURVED EASTERLY LINE. 42,89 FEET SOUTHERLY FROIVI THE NORTHEASTERLY CORNER OF SAID LOT 90.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES, LYING BELOW A DEPTH OF 500 FEET, WITHOUT THE RIGHT OF SURFACE ENTRY, AS RESERVED IN INSTRUMENTS RECORD DECEMBER 10, 1968 AS INSTRUMENT NO, 2802, OFFICIAL RECORDS.

APN: 2420-033-008

More commonly known as 4545 Auckland Avenue Toluca Lake, CA 91602

END OF EXHIBIT "A"